Eaton *v.* Sanford.

In the Court below,

WILLIAM SANFORD, and LYDIA, his wife, *Plaintiffs*; CALVIN EATON, *Defendant.*

T HIS was an action of ejectment for one undivided thirteenth part of a lot of land in North-Haven.

On trial to the jury, on the general issue, the plaintiffs claimed, that the demanded premises belonged to said *Lydia*, as heir at law to *John Granniss*, deceased ; and the defendant claimed the whole lot by a number of mesne conveyances from *Caleb Granniss*, a son of *John Granniss*.

It appeared, that in 1740, *John Granniss*, being seised of said land, died intestate, leaving *Caleb*, *Priscilla*, and other children. *Priscilla* was married in 1739, at the age of nineteen, and died, before her husband, in 1755, leaving a daughter, said *Lydia*, who was married to said *Sandford*, in 1763, at the age of eighteen.

The defendant, and those under whom he claimed, had been in possession, holding adversely, from the year 1746, when the first conveyance was made by *Caleb Granniss*. This suit was commenced in November, 1804.

The Court, in charging the jury, directed them, that the statute respecting the possession of lands (*a*) did not operate against the plaintiffs' title, but that the plaintiffs were within the exceptions and *proviso* of that statute. To this direction of the Court, the defendant filed a bill of exceptions.

(*a*) *Stat.* 134, *edit.* 1796.

A. being seised of real estate, died in 1740, leaving B. an infant, and *feme-covert*, who died before her husband in 1755, leaving C. an infant daughter, who was married during infancy to D.—Held, that in an action by D. and C. for such estate, commenced in 1804, against E. who had been in possession, holding adversely, nearly sixty years, the claim of the plaintiffs was not barred by the statute of limitations.

1807.

EATON
*v.*
SANFORD.

*Ingersoll,* and *Smith,* (of New-Haven,) for the plaintiff in error, contended,

1. That, at all events, *Sanford,* the husband, was not entitled to recover, as there is no saving in the statute for *him.* He could have brought his action as well forty years ago, as now.   He ought to meet with no indulgence in asserting a claim, which he has abandoned for such a length of time.

2. That *Lydia,* the wife, has no right.   She was under the disability of infancy, when the title accrued, and before she became of age, she voluntarily took another disability, that of coverture.   The *proviso* is, that five years shall be allowed after the determination of those disabilities, which are in existence at the time the title accrues.   The statute began to run when she became of age, nothwithstanding her coverture ; and when the statute begins to run, it stops not for any disability. (*b*)

3. That *Priscilla,* the mother, had no title, not having asserted it during her life ; of consequence, the daughter has none, not having asserted it within five years after the death of her mother.   There is nothing in the statute, that affords any reason to suppose, that after one disabled person is dead, or the disability is removed, the *heirs* of that person can, at any time afterwards, take shelter under another disability. (*c*) The mother of *Lydia* was not seised ; and therefore could not be an *ancestor* from whom *Lydia* can derive a title.

4. The Court ought to have left it to the jury to presume, that *John Granniss's* estate was legally settled ; and that, therefore, *Caleb Granniss,* his son, had a lawful title. (*d*) *Priscilla* might have released her right in connexion with her husband. May not the common law doctrine regarding a writ of right be applicable to this case ? More than sixty years have elap-

(*b*) 5 *Term Rep.* 300, 310, *Doe dem. Duroure* v. *Jones.*
(*c*) 2 *Bla. Com.* 209.
(*d*) *Cowp.* 102, 214.   *Taylor's Rep.* (*N. Car.*) 157.

sed (e) since a peaceable possession began in *Eaton*, or those under whom he claims.

*Daggett*, and *Staples*, for the defendants in error, contended,

1. That the husband, *William Sanford*, had no right to bring this suit. This was not a suit in his name or right, but in the name and right of his wife *Lydia*. He is one of the plaintiffs merely for the purpose of being answerable for the bill of costs, and of managing the suit ; but the cause of action, or right demanded, is not his, but his wife's.

It is said, however, that this right to prosecute his wife's claim he has enjoyed forty years ; and that is long enough ; and if he will not, in a less time than that, prosecute this right, he shall not be permitted to do it at all. Though *Sanford*, when this land is recovered, is to have a life estate in it, yet this is wholly in right of another, and not in his own right. But he does not now claim simply a life estate for himself, though the consequence of this recovery may be, that he will, in right of his wife, obtain a life estate ; but his claim is of a fee-simple in the name and right of the wife. It is the wife, who now, by permission of her husband, for the first time obtained, appears in Court, and demands, with her husband, not his, but her own right.

2. But secondly, the plaintiff in error contends, that *Lydia* has no right to the premises ; that by the great length of time, more than sixty years, *her* claim is barred. In reply, we contend, that *Lydia* is directly within the savings and proviso of the statute. Were it not for the statute, it would be admitted, that this objection could not be made. At common law, this right would be as good at the end of sixty as of six years. There is *no justice* in a statute of limitations. It is founded wholly on political reasons. The

(e) From the conveyance by *Caleb Granniss*, to the commencement of this suit, was *fifty-eight* years only. *R.*

claim of *Lydia* to this land, in reason and justice, is not the less strong, because she has been kept out of the enjoyment of the right, and for a great length of time. It cannot be denied, that the right was once well vested in her, or her immediate ancestor ; and it follows, that, unless deprived of it by force of this statute, she yet retains it. If she comes fairly within the proviso of this statute, as it respects her, it stands as though it had never existed.

The proviso of the statute is express, that persons under twenty-one years of age, femes covert, &c. shall have five years after such liability is removed, within which to make entry, or bring an action. (*f*) *Lydia Sanford* has ever been under one or both of these disabilities, and yet remains under the last ; of course, cannot be affected by the statute.

But it is said, that after the removal of one disability, she cannot be permitted to take upon herself another ; and that when the statute once begins to run, it runs over all mesne acts ; and *Duroure* v. *Jones* is cited. But here the first disability was not removed before the second was taken. While an infant, she became a feme covert ; so that the statute never began to run,—never attached. It is admitted, that when the statute once attaches, it must continue to run ; and to this point is the authority cited ; but it can never attach, or begin to run, so long as the claimant is within any one clause of the *proviso*.

But it is said, that the person, being under one *specific* disability, cannot, while under that disability, take upon himself another ; and that in no case are more than five years to be allowed from the time of the ending of the first disability. No authority is cited to support this position ; and the position is directly against the equity of the case, and directly against the plain letter of the statute.

(*f*) *Stat.* 254, *edit.* 1796.

It is a principle of common law, that persons under the disabilities in this statute would not be affected by that, or any other general statute. They are not *sui juris :* They are not legal persons ; of course, cannot be affected by statutes, unless particularly named.

Our statute follows the *Stat. 4 H. 7. chap. 24.* which regards fines and non-claims. Both by the English statute, and our own, a claim, or an entry, is contemplated, which is a known legal act, which can be done by an adult only.(*g*) Are persons by the law disabled from doing legal acts, and at the same time required to do them ; or suffer the consequences of laches ? To infants, married women, &c. laches are not imputable. As it respects them, while in this situation, the law is as though it did not exist.(*h*)

3. It is again said, that *Priscilla* had no right, because she lived more than five years after she came of age ; and that the new disability of coverture voluntarily taken, while a minor, shall not avail. This objection has been fully answered in considering the objection to the title of *Lydia.* They were both, at the time of marriage, situated, in point of fact, precisely alike.

4. But it is said, the great length of time that has elapsed ought to have been left to the jury, from which to presume a grant from *Priscilla*, or *Lydia*, or some one else. To which objection we answer, that presumption from length of time can never be made against infants, married women, or persons *non compotes.* The principle, on which length of time is to afford presumption of fact, is, that the parties are presumed to have done what it appears they might, or ought to have done. But persons under legal disabilities are never presumed to have done what they cannot by law do. Statutes of limitation do not run,—legal presumptions from

(*g*) 1 *Saund.* 319.
(*h*) 1 *Plowd.* 375. *Shep. Touch.* 30. 1 *Leon.* 215. *Dyer* 133. 13 *Vin. Abr.* 289, 294. 2 *Hen. Bla.* 584.

lapse of time do not operate, against any persons, except *legal* persons,—persons *sui juris.*

It is asked, whether, as more than sixty years have elapsed, the doctrine relative to, and limiting a writ of right may not be applicable ? By our statute, the writ of right, and all writs of entry, are limited to fifteen years, except, &c. and under the exception there is no other limitation of time than five years from the time of the removing of the disability. We have a statute covering the whole subject.

But again, the doctrine referred to, as to a writ of right, does not extend to infants, married women, &c. or persons not *sui juris.*

BY THE COURT, unanimously,

The judgment was affirmed.

## De Forest *v.* Brainerd.

### In the Court below,

JEHU BRAINERD, *Plaintiff ;* LOCKWOOD DE FOREST, *Defendant.*

An allegation, that the plaintiff, who was sheriff, *appointed* the defendant one of his deputies, at a time specified, is supported by proof, that the plaintiff having previously appointed him, *continued* him in office at and after that time.

A contract between a sheriff and his deputy, that the latter shall pay the former a certain sum *per annum* in consideration of his appointment, is not illegal.

THIS was an action of *assumpsit.*

The declaration stated, that the plaintiff being sheriff of the county of New Haven, the defendant, on or about the first day of January, 1804, applied to him to be appointed one of his deputies ; that the plaintiff accordingly appointed him, which appointment was approbated, by the County