Tilgiiman, C. J.
[After stating the point.]—The point has never been decided by this Court; it is of considerable importance, and not free from difficulty. Before I consider the Act of Assembly, it may be proper to mention, that the limitation of actions for the recovery of real property is es *210 sentid to the peace of society, and therefore the construction of S-atutes on that subject, ought not to be extended by equity, so as to contravene the main object of the Legislature, by keeping up the uncertainty of title, for a great, and indefinite length of time.
Our Statute, made the 26th March, 1785, follows with very litde variation, the i£n§-izs/zs,Statute of 21 Jac. I. c. 16. The principal difference is, that our limitation is twenty-one years, the English, but twenty. Our Statute begins, with enacting, “ that no person shall support an action for the recovery of real property, of the seisin or possesion of himself or his ancestors, nor declare or allege any other seisin or possession in himself or them, thán within twenty-one years next before such action commenced.” Then follows a proviso, “that if. any person having such right or title, shall be, at the time such right or title first descended or accrued, within the age of twenty-one years, feme covert, non compos mentis, imprisoned, or beyond the seas, or from and without the United States of America, then such person, and the heirs of such person,shall and may, notwithstanding the said twenty-one years are expired, bring his or their action, or make his or their entry, as he, or they might have done before the passing of this Act, so as such person, or the heirs of such person shall within ten years next after attaining full age, discoverture, soundness of mind, enlargement out of prison, or coming into the said United States, take benefit of, or sue for the same, and no time after the said ten years; and in case the person shall die with* in the first term of ten years, under any of the disabilities afforesaid, the 'heirs of such person shall have the same benefit, that such person could or might have had, by living until the disabilities should have ceased or been removed.” Now it is plain, that independently of the proviso, the plaintiffs would be barred from their action, because they neither made an entry, nor prosecuted an áction, within twenty-one years from the time of their titles first accruing; but their case fell within the proviso, because at the time of their titles first accruing, they were infants. Then, according to the words of the statute, their title would have remained good, provided they had prosecuted it within ten yeafs, from the time of their coming of age. But they did not so prosecute it; consequently they are not helped by the proviso. The ten years *211 are to be counted from the time of the ceasing or removing of the disability, -which existed when the title first accrued. If other disabilities, accruing afterwards, were to be regarded, the right of action might be saved for centuries. The descent of the title upon infant females, and the marriage of those females under the age of twenty-one, might succeed each other ad infinitum. The construction contended for by the plaintiffs, would be attended with public inconvenience; it militates with the main object of the law, and is not agreeable to its words. It is contrary also to the current as well as the general spirit of authorities. It was once contended on the Stat. 4 H. VII. c 24, (concerning fines,) that although the period of five years allowed for claim, began in the life of the ancestor, yet it should be suspended, in case the title descended upon an infant heir. But that position was negatived in the case of Stowell v. Zouch, in the twentieth year of Queen Elizabeth, Plowd. 356, and from that time it haá been settled, that when the Statute has once begun to run, it shall never stop. This decision applies to the statute, 21 Jac. I, and to our Statute of Limitations. It is not the point directly before us, but shews, that the Judges have refused to extend the time of entry, or action, by equity. But the very point in question has received a direct adjudication, in Courts of the highest respectability. In the case of Eager and wife v. The Commonwealth, (4 Mass. Rep. 182,) the question was upon the time of limitation in writs of error. The savings in the proviso of the Massachusetts Statute, concerning writ of error are pretty much like those in our 'Statute of Limitations, except that only five years are allowed, from the ceasing of the disabilities. A female infant, was entitled to a writ of error, and married during her infancy. Held, that no regard should be paid to her coverture, but she was limited to five years from the time of her attaining the age of twenty-one. In Demarest v. Wynkoop, 3 Johns. Cha. Rep. 129, the case was upon the New York Statute of Limitations, (very much resembling our own.) The title accrued to a female infant, who married before she came of, full age. The Chancellor Kent, decided, on great consideration, as his learned argument shews, that no regard was to be paid to any disability but that which existed at the time the title first accrued, and consequently the Statute operated as a bar, unless an *212 action was brought within ten years from the time of the infancy’s ceasing. A different opinion was held by the J udges of the State of Connecticut, in the case of Eaton v. Sandford, 2 Day. 523. With great deference however, to that opinion, it may be remarked, that no reasons are assigned for it, and from the case of Bush v. Bradley, 4 Day, 298, it is presumed, that the law is not considered as settled. I find no decision upon the point in the English Courts, prior to our revolution. Their subsequent decisions are not permitted to be cited in the Courts of Pennsylvania, and if they were, they would probably afford but little satisfaction on this subject. The argument in support of the plaintiffs’ construction is not void of plausibility. There are certain disabilities, which in the opinion of the Legislature, ought to stop the commencement of the running of the,Statute ; it is reasonable therefore, to infer, that as long as any of these disabilities exist, the Statute should not begin to run ; because one disability is of as much weight as another. To this argument there is a plain practical answer ; that if the principle contended for applied to its full extent, the Statute would be paralyzed. For suppose that during the ten years allowed for entry, &c., after the ceasing of the first disability, a second disability should occur, why shall you not wait until that has ceased ; and in the meantime, another may have occurred which will have an equal claim. But it cannot be pretended, that after the first disability has ceased, and the ten years have begun to run, any regard shall be had to a new disability, first accruing during the ten years. Our Act of Assembly is indeed not clearly or accurately expressed, when it speaks of a persons dying under a disability within the ten years. But the meaning is, that if the title first descends or accrues to a person under disability, and that person dies before the disability cease or be removed, his heir, whatever may be his condition as to ability or disability, shall have the same benefit that he himself might have had, by living until the disability had Ceased, that is to say, he shall have ten years from the death of his ancestor—but if the person to whom the title first descends or accrue, being then under a disability, shall live till the disability cease, then ten years, and no more, shall be allowed to him and his heir, in case he die within the ten years. There is no expression in the Act which has a regard *213 to any disability but one, viz. that which existed when the title first descended or accrued, nor to the disability of any person but one, wzz..the person to whom the title first descended or accrued. The good'effects intended by the Statute, might be frustrated by a series- of disabilities. It was this consideration which induced the'Judges to take their stand against the extension of time by an equitable construction, so long ago as the reign of Elizabeth, and this induces me, after turning the question on every side, viewing it in all its bearings, and following it to all its consequences, to concur with the Judges of New York and Massachusetts. I am of opinion, that notwithstanding the marriage of Mrs. Thompson and Mrs. MlBriar, during their infancy, and their continued coverture' ever since, they are barred from their action-, because it was not commenced within ten years from the time of their arrival at full age. The judgment is to be affirmed.
Gibson J. was sick and absent at the argument, and delivered no opinion.
Duncan. J.
The question of abandonment or dereliction is often one of mere fact; but acts of desertion may be so strong, absence so long -continued, as to justify the Court' in considering it a matter of law, and so to instruct the jury. It was in this case left to the jury; so was the question,of adverse possession. If George Smith entered, and took possession as the trustee, of the plaintiffs, the Act of Limitations would not run ; for he could no more change his character of trustee, than a tenant could his character of tenant; he would be equally bound to restore the possession to his cestui que trust, as a tenant would to his landlord. The rule that a party shall not' change the ground of his possession, is a just one; if a trustee is in possesion, and does not execute his trust, the possession of the trustee is the possession of the cestui que trust, and if the only circumstance is, that he does not perform his trust, his possession operates nothing as a bar, because his possession .is according to his title ; just as in the case of a lessee for years, though He does not pay his rent for fifty years, his possession is no bar to an ejectment, after the expiration of this term, because his possession Is according to the right of the party, against whom he seeks to set it up ; so of a possession obtained by fraud;. but the *214 Statute begins to run from the discovery of the fraud. A Court of Equity cannot impeach a transaction on the ground of fraud in obtaining the possession, if the fact of the alleged fraud was within the knowledge of the party twenty-one years before, during, all which time it was open to him to prosecute his claim. After the discovery of the fraud, a man has a right to avail himself of the Statute ; but so long as the fraud is unknown, pending the concealment of the fraud, the Statute ought not to run. The discovery of the fraud, gives a new right of action ; but whether the possession when taken was an adverse act, or obtained by fraud, were facts for the jury, and to them it was submitted ; if they have drawn erroneous conclusions, the plaintiffs’ remedy was by motion for a new trial. There certainly- were circumstances, from which a jury might have inferred, that the entry of Smith was not adverse, or that it was fraudulently obtained from the step-father of the plaintiffs. The time when Smith took possession, directly after Guthrie had left it, the time when the warrant was taken out, the call of the warrant for improvement, dating it back to the original settlement of Archibald Lochrey ; these were strong facts,-and would have warranted a different conclusion. Guthrie's possession was the possession of his step-children, he would be presumed to enter as their guardian, and if he covinously delivered up the possession to Smith, as there has been no conveyance to a third person, the Statute would only begin to run against the plaintiffs, from the time of their knowledge, and when they were under no disability. To encounter this, there is the long acquiescence of-the plaintiffs residing in the neighbourhood, affording an evidence of their relinquishment, independent of statutory provisions ; and putting them out of view, the dormitancy of such a claim resting on mere equity, and depending on possession and residence as the only indicia of the right, their long acquiescence in the possession, and looking on while Smith was making his improvements, were circumstances which ought to have their weight with a jury; yet it must strike the mind with force, that when Smith took the possession, there was nothing like abandonment. Had the children of Lochrey been even adults, the possession could scarcely be said not to have continued in them: it was not a vacant and abandoned settlement on which Smith entered. It is the not reclaiming the possession *215 for so many years, their suffering Smith to proceed with his improvement, the acquiescence in his right, from which a presumption might arise, that in their own view of the subject, something had taken place, the evidence of which might be lost in the lapse of time, that his possession was rightfully obtained,. But these circumstances were left to the jury ; their attention was called to them by the Court, and they were desired to draw their own inference. The concluding6 part of the charge must be taken in connection with all that precedes it, and it would not be treating the charge of a Court with fairness, to decompose it, and scan and scrutinize it sentence by sentence ; no human production could, stand against such test. In this part of the charge, I cannot say that' I find any thing erroneous, or that might tend to mislead the jury.
But if the entry of Smith was adverse and fraudulent, were the plaintiffs within the exception of the Act of the 26th of .March, 1785, for the limitation of actions to be brought for the inheritance or possession of real property. This Act is nearly in the same words as the Statute of 21st Jac. I, with an addition hereafter to be noticed. The ancestor Archibald Lochry, died in 1781 ; the plaintiff, Jane, was born in 1776, Elizabeth, in 1779; Jane married in 1793, Elizabeth married under age. .This action^was brought in 1813 ; the Court decided that they were barred by the Act at the end of ten years, after their arrival at twenty-one, though they married during the disability of infancy, and have remained covert. It is a rule applicable to this as well as to all Statutes barring or terminating rights, that the party who would extricate himself from the enacting clause, must bring his case strictly within the exceptions, Innes v. Barnes, 2 Gallison, 319. The plaintiffs here are barred by the enacting clause, unless, their case falls within the proviso. It is matter of surprise to find that in England, even up to this time, the doctrine of successive or accumulative disabilities is not settled; the Judges of the King’s Bench holding, that there cannot be such succession, within the benefit of the proviso; while in the Common Pleas they hold, that the ten years do not run during the continuance of disabilities ; all disabilities, as they hold it, must cease before the ten years begin to run. A very judicious author, in his Lazv of Vendors, Sudgen, 317, *216 is of opinion, that the latter is the true construction, and the construction invariable in practice ; while another writer in a very well arranged treatise on the Law of Ejectment, supports the former construction, Adams, 56. The succession of disabilities here is in the same persons, and the plaintiffs contend, that though their infancy at the time their title first accrued, does not bring them within the benefit of the proviso, yet as another disability accrued before the termination of their infancy, they are brought within it, because there has been no time since the right first accrued, in which they have not been disabled. This appears at first view quite reasonable, but when we reflect on the policy of the law and the words used by the Legislature, a different conclusion must be drawn. The disability when the right first accrued is the disability provided for. That is the point of time to be considered, and that is the disability excepted out of the enacting. clause ; it would be extending the privilege of one disability by an equitable construction, far beyond the letter of the law, to cover all disabilities, as they rise in succession, and against the spirit of all the limitation enactments, the end being to extinguish dormant rights, to give security to long and undisturbed possessions, and quiet and repose to those whose possession had been long acquiesced in ; but if disability were added to disability, coverture to infancy, claims might be protected and kept alive to an indefinite extent of time, and the Act be in operation for centuries. In several of the States, a construction has been put on similar clauses, correspondent, as I think with the words of the provision, and the intention of the Legislature. In Massachusets, Eager and wife v. The Commonwealth, 4 Mass. 182, the precise point arose; the plaintiff was an infant, and before the termination of her infancy, she married ; it was held, that the latter disability not existing, when the right first accrued, she was not within the benefit of the provision. In Connecticut, Eaton v. Sandford, 2 Day, 523, a contrary construction was given, but the question was still considered as open, and in Bush v. Bradley, 4 Day, 298., there is a very able opinion of Mr. Justice Smith opposing it. In the Court of Chancery, New York, 3 John Ch. R. 129, Demarest v. Wynkoop, all the cases down from Stowel v. Zouch, Plowd. 358, are reviewed, and that was likewise this very case; during *217 the infancy of the plaintiff, a second disability ensued by marriage, and it was made a question, whether a succession of disabilities, closing one on each other could be permitted as an excuse within the proviso; it was decided that it could not, but that the disability entitling the party to the benefit of the- proviso, must exist when the right first accrues, so that if during the ten years allowed to an infant, a subsequent disability, as coverture arise, the. time continues to run, notwithstanding such second disability, and that successive accumulating disabilities are not within a settled and sound construction of the law; and it was again so decided in the Supreme Court of the State, 18 Johns. 40. But there is an explanation in our Act, not to be found in the-Statute of James I, “in case such person or persons shall die within the said term of ten years, under the disabilities aforesaid, the heir or heirs of such person shall have the same benefit, that such person or persons could or might have had by living until their disabilities had ceased or been removed.” Thus it is evident, that the Legislature intended that in all cases the bar should be complete, if entry was not made, or ejectment brought within ten years after the removal of the disability existing in the person in whom the title first accrued, and-when it first accrued, as if the person had continued to.live, and never intended a succession of disabilities in the same person; one disability, and that when the title first accrued, was aione contemplated and alone provided for. The words of the proviso, the plain meaning.of the Legislature, the spirit and policy of the Act, and the weight of authority, are against the construction contended for, by the plaintiffs in error. The ten years began to run the moment the existing disability ceased and continued to run, notwithstanding other supervening disabilities. None are provided for, but such as exist at the time the right of entry first accrues j but if several disabilities existed at the time, the provision would extend to all, or the one which continued the longest.
Judgment affirmed.