## Case No. 8,317.

### LEWIS et al. v. BARKSDALE.

### [2 Brock. 436.] [1]

Circuit Court, W. D. Virginia.   May Term, 1831.

LIMITATION OF ACTIONS — DISABILITY—COHEIRS— PROVISIONS OF ACT PERSONAL.

1. In the construction of the proviso of the act of limitations, exempting persons under certain enumerated disabilities, from the operation of the act, who laboured under the disability "at the time of such right or title accrued," a subsequent disability cannot be tacked to one existing at the time, though both occurring in the same person, to prevent the statute from attaching.

[Followed in Parsons v. M'Cracken, 9 Leigh, 502.]

2. Where there are several co-heirs, lessors of the plaintiff, in an action of ejectment, and joint and several demises laid in the declaration, and one of the co-heirs, who labours under no disability, fails to bring his action within the time limited by law, though his right of recovery will be barred by the act, it will not affect his co-heirs who were under disability. The proviso of the act is personal, and applies to all those who labour under any of the enumerated disabilities.

[Cited in Moore v. Armstrong, 10 Ohio, 14; De Mill v. Moffat, 49 Mich. 130, 13 N. W. 387.]

This was an action of ejectment brought in 1828, by the heirs at law of Mary Lewis, deceased, and others, claiming under them, against Rice Barksdale, to recover possession of a tract of land lying in the county of Albemarle, and state of Virginia. Joint and several demises from the heirs and their vendees, lessors of the plaintiff, were laid in the declaration. The defendant pleaded the general issue, confessed the lease, entry, and ouster, in the declaration supposed, and agreed to insist on the title, only at the trial. The case is fully stated in the following special verdict, rendered at the November term, 1830: "We, the jury, find that the land in the plaintiff's declaration mentioned, was the fee-simple estate of Mary Lewis, the wife of Hopkins Lewis, late of Albemarle county,

[1] [Reported by John W. Brockenbrough, Esq.]

in Virginia; that the said Mary Lewis died intestate, in the year 1797, her husband, the said Hopkins Lewis, being then seized in right of his wife of the said lands; that the said Hopkins Lewis, as tenant by the courtesy, remained seised thereof, until he departed this life before the year 1801. That at his death, the heirs of the said Mary Lewis, lessors of the plaintiff, became entitled by inheritance to the fee-simple estate, and possession of the land, which heirs were as follows, to wit: Nancy Lewis, born the 5th of August, 1782; John Lewis, born the 8th of November, 1783; Edward Lewis, born the 20th of September, 1785; Henderson Lewis, born the 10th of July, 1787; Granville Lewis, born January 10th, 1791; Polly D. Lewis, now Mary Russell, born January 8th, 1793; and Matthew Lewis, born February 13th, 1795, all of whom then resided in the commonwealth of Virginia. That on the 3d of November, 1801, four of the aforesaid heirs, to wit: Nancy, John, Edward, and Henderson, made choice of a certain Matthew Henderson as their guardian, who was thereupon appointed as such by the county court of Albemarle, &c. That in the month of February, 1806, two other of the said heirs, to wit: Granville and Matthew Lewis, made choice of a certain Micajah Clarke as their guardian, who was accordingly appointed such by the county court of Campbell, in the commonwealth of Virginia, &c. That from the time of the death of the said Hopkins Lewis, till possession was taken of the land aforesaid, by Samuel Barksdale, in manner hereinafter stated, the actual possession thereof, was in tenants for years, which tenants acknowledged the title of the said heirs, it not appearing to the jury that the guardians aforesaid, ever took actual possession of the said land, or did any act in relation to it, except to sell the same as is hereinafter mentioned. That the aforesaid Polly D. Lewis, had no guardian shown to this jury. That some time in the year 1806, the aforesaid Matthew Henderson, and Micajah Clarke, sold the said land, in fee-simple, to the aforesaid Samuel Barksdale, and bound themselves personally, giving a certain John Clarke as their surety, to make to the said Samuel, a good title to the land aforesaid, but no deed or instrument in writing, from the said Micajah Clarke, Matthew Henderson, and John Clarke, or either of them, to the said Samuel Barksdale, was produced, or proved to the jury to have been executed. That in pursuance of the said sale, the said Samuel Barksdale took possession of the land aforesaid, at Christmas, in the year 1806, and not before. That from the time the said Samuel Barksdale took possession, up to the present time, he, by himself, and his son, the present tenant, and the defendant in this action, has held the actual possession thereof, claiming it as his own property, under the sale aforesaid, and quietly enjoying it as his own. That from the time the said Barksdale took pos-

session as aforesaid, until the institution of this suit, no demand for the delivery of the possession of the said land was made by any of the lessors of the plaintiff, and no ouster was proved to have been made, previous to the institution of this suit. That at the time when the said Samuel Barksdale took possession of the land as aforesaid, the said heirs of Mary Lewis were all absent from this commonwealth, and living in the state of Kentucky, except Polly D. Lewis, now Mary Russell, who was then in this commonwealth, and did not leave it until some time in the year 1807. That at the time of the taking possession aforesaid, all the heirs of Mary Lewis were of full age, except the four younger of them, to wit: Henderson, Granville, Polly, and Matthew, who· were then under twenty-one years of age, and minors. That the said heirs have all constantly resided in the state of Kentucky, and been absent from this commonwealth from the periods of their respective removals as aforesaid. That all the minors aforesaid, attained their full age of twenty-one, more than ten years before the commencement of this action. That while the said Samuel Barksdale was in the actual possession of the land aforesaid, claiming it as his own, under the aforesaid contract with Micajah Clarke and Matthew Henderson, three of the aforesaid heirs, to wit: Henderson Lewis, Edward Lewis, and Matthew Lewis, executed their several deeds ·of bargain and sale, for the purpose of conveying their respective interests in the land, to James R. Russell and Bennett Henderson respectively, two of the lessors of the plaintiff. That the said Matthew Lewis after the execution of his deed, and before the institution of this suit, departed this life, intestate, leaving his aforesaid brothers and sisters his heirs. We further find the several leases, entries, and ousters in the declaration alleged, and the possession of the defendant Rice Barksdale. And, if, ·upon the foregoing facts, the plaintiff hath title to recover, in this action, upon any or all of the demises in the declaration, the whole, or any part of the land in the declaration mentioned, then, upon such of the said demises as the plaintiff is entitled to recover on, and as to the whole of the land, or so much thereof as he, upon the facts aforesaid is entitled to recover, we find the defendant guilty in manner and form as the plaintiff has declared against him, and assess the plaintiff's damages by occasion thereof, at one cent. But if the plaintiff be not entitled to recover upon any of the said demises, then we find for the defendant."

THE COURT (MARSHALL, Circuit Justice, and BARBOUR, District Judge) took ·time until the next term, to consider the questions of law arising on this special verdict, and at the May term, 1831, the opinion of the court (consisting of the same judges) was delivered as follows, by

MARSHALL, Circuit Justice. This is an ejectment brought by seven co-parceners, to obtain possession of a tract of land, of which their ancestor died seised. The original title of the lessors of the plaintiff, is not controverted. The defendant resists the claim under an adversary possession of more than twenty years. Mary Lewis died, seised in fee of the premises, in the year 1797, intestate, leaving seven children, the lessors of the plaintiff, her heirs at law. The premises remained in the possession of her husband, as tenant by the curtesy, until his death, which happened previous to the year 1801. Matthew Henderson was appointed guardian to four of the heirs, and in the year 1806, Micajah Clarke was appointed guardian to two others of them. In the year 1806, Matthew Henderson sold the land to the defendant, who took possession thereof on the 25th of December, 1806, and has held quiet possession until the institution of this suit, claiming to hold the premises as his own property, in fee simple, under the said sale. No deed of conveyance was exhibited, but a bond, in which the said Henderson and Clarke bound themselves with a surety, to make a good title, was relied on by the defendant.

On the 25th of December, 1806, six of the infant heirs, for whom guardians had been appointed, were in the state of Kentucky, where they remained until the institution of this suit. Mary Lewis, now Mary Russell, one of the lessors of the plaintiff, who was also an infant, was at that time in Virginia, but removed to the state of Kentucky some time in the year 1807.[2] The plaintiffs, each of them, attained their age of twenty-one years, more than ten years before the institution of this suit. A joint demise, and also several demises from each of the heirs, are laid in the declaration. Had the lessors of the plaintiff been seised in severalty of the same property, and been placed under precisely the same circumstances in every

---

[2] The proviso of our act, limiting the right of entry into lands, tenements, or hereditaments, to twenty years after such right shall have accrued, declares, "that if any person or persons entitled, &c., shall be, or were, under the age of twenty-one years, feme covert. non compos mentis, imprisoned, or not within this commonwealth at the time of such right or title accrued, or coming to them, every such person, and his or their heirs, shall. and may, notwithstanding the said twenty years are, or shall be expired, bring, and maintain his action, or make his entry within ten years next after such disabilities removed, or the death of the person so disabled, and not afterwards." 1 R. Code, 1819, pp. 487, 488, §§ 1, 2; Tate, Dig. 407. But the act of March 8, 1826 (Sess. Acts, 1825–26, p. 25, § 3), repealed the saving. as to persons not within the commonwealth at the time when their right, or title to any action, or entry accrued; and the act of February 5th. 1831. changed the limitation of the right of entry. from twenty. to fifteen years, and the saving in favour of persons under disability from ten years to five: and the same act repealed so much of the act of March 8, 1826, as applies to real. or mixed actions (Sess. Acts, 1830–31, p. 98, §§ 1, 2, 3).

other respect, no doubt could exist in the case. On the 25th of December, 1806, when the cause of action accrued, Mary Lewis, now Mary Russell, was an infant, residing within the commonwealth of Virginia, and came within that exception of the statute only, which saves the rights of infants. Pending this disability, she removed out of the country, and has continued out of it until the institution of this suit. But it is admitted that one disability cannot be tacked to another, and, consequently, the right of this party is the same as if she had remained within the state.[3] The statute preserves her right of action, for ten years after she has attained her age of twenty-one years. That time having expired, she would be no longer within its saving. The other six plaintiffs were out of the commonwealth, when the cause of action accrued, and have continued out of it until the institution of this suit. Consequently, they are not barred by the act. If, then, the plaintiffs claimed in severalty, it would be clear that six of them would be entitled to recover, and that the defendant would retain the seventh part of Mary Russell.

If this were an original question, I should feel much difficulty in so construing the first and second sections of our act of limitations, as to exclude one co-heir from the exception in his favour, in consequence of the omission of another to assert his right within the time, to which it is limited. The proviso of the act, appears to me, to be in favour of each individual who comes within it. It is personal. It applies to him who labors under the disability. It is made in consequence of that disability; and, it seems to me, that the intention of the act would be defeated by a construction, which denies the benefit of the saving, to an individual coming within its words, or would give that benefit to an individual not coming within them. Both the plaintiffs and defendant, however, insist, that this rule does not apply to the case at bar.

The counsel for the plaintiffs contends, that the guardians of those infants, to whom guardians had been assigned, had a right to lease the lands during the infancy of their wards; that Barksdale must be considered as coming into possession under the title which the guardians had a right to make, and as being tenant in common with Mary, the coparcener, who had no guardian, and whose right, the guardians of the other infants could not pass, and, that an adversary possession against Mary, cannot be presumed. The law respecting the possession of one coparcener, or tenant in common, as against co-tenants, is certainly as it has been

---

[3] It is worthy of remark, that Mr. Blanshard, in his treatise on the Statutes of Limitation, pp. 18, 19, 1 Law Library, lays down this doctrine of tacking disabilities, somewhat differently. He says, that if there are successive disabilities in the same person, on whom the right first descended, the statute "will not begin to run against him till he shall be free from disability; and successive disabilities, without any intermission, will continue to him a protection against being barred by non-claim; but any cessation of disability, will call the statute into operative force, and no subsequent disability will arrest the bar produced by the statute": citing 2 Preston, Ab. Tit. 340. "But it has been said," he continues, "that if, before one disability cease, another commences in a different person; as if a right of entry accrue to a feme covert, and she die, leaving her heir within age, or the like, the statute does not begin to run until after the latter disability ceases." In support of this latter proposition, he cites Cotterell v. Dutton, 4 Taunt. 826, and Arch. Pl. 27. It will be observed, that the opinion of Chief Justice Marshall, is directly opposed to the doctrine laid down by Mr. Blanshard, even where the successive disabilities occur in the same person. In the above case, there were successive disabilities in the same person, yet the party was held to be barred by the statute, the disability of infancy, which alone existed at the time of the right of entry accrued, having ceased more than ten years before action brought, though pending the first disability, another attached, and continued up to the institution of the suit. Mr. Blanshard does not adduce the authority of any adjudged case, in support of his doctrine in the case first put, and the opinion of the chief justice is certainly more consonant with the phraseology of both the English, and American statutes. Our statute declares—and St. 21 Jac. 1, c. 16, § 2, uses equivalent terms—that if the persons entitled to such right of entry, &c., shall be, or were, under any of the enumerated disabilities, "at the time of such right, or title accrued, or coming to them, &c." Now, the sound construction of this language would seem to require, that the statute should be considered as beginning to run from the time that the right of entry, &c., accrued, as to all disabilities commencing at a posterior time. A subsequent disability, though succeeding "without intermission," and in the same person, one existing at the time, is without the pale of the letter of the act, and to tack them, would seem to go far to contravene the policy and spirit of the law, in creating statutes which were designed, in the language of Mr. Brougham, to "repair the ravages committed by time upon the evidence of human rights," and which have been aptly and emphatically termed, "statutes of repose."

Since the preceding part of this note was prepared, the editor has examined a case decided by the supreme court of Pennsylvania in 1821, which entirely sustains the view, which he has ventured to advance above. In that case, ejectment was brought by two female heirs. Both were infants when their title accrued, both were married before they attained their majority, and so continued when the action was brought, and more than ten years had elapsed since they came of age. The Pennsylvania statute, like that of Virginia, is taken almost verbatim, from the English statute of 21 Jac. 1, c. 16. Tilghman, C. J., said: "The ten years are to be counted from the time of the ceasing or removing of the disability which existed when the title first accrued. If other disabilities, accruing afterwards, were to be regarded, the right of action might be saved for centuries. The descent of the title upon infant females, and the marriage of those females under the age of twenty-one, might succeed each other, ad infinitum." The court held, that the plaintiffs were barred by the act. Thompson v. Smith, 7 Serg. & R. 209. In conformity with this decision, are the cases of Eager v. Commonwealth, 4 Mass. 182; Demarest v. Wynkoop, 3 Johns. Ch. 129; Jackson v. Wheat, 18 Johns. 40. The case of Eaton v. Sandford, 2 Day, 523, is contra, but the law does not seem to be settled in Connecticut. Opinion of Smith, J., in Bush v. Bradley, 4 Day, 298.

laid down. But Mr. Barksdale did not enter under a lease, nor did he, so far as we are informed by the verdict, acquire the possession under Henderson and Clarke, as guardians. He purchased from them an absolute title, in fee simple, entered on the premises in virtue of that title, and held the same as his property. It is admitted, that this is evidence, on which the jury might have found an adversary possession, and on which the court might have instructed the jury so to find; but, as the jury has not found the adversary possession, the court, it is said, cannot presume it. But the jury have not found the tenancy in common, and Mr. Barksdale certainly did not enter as a tenant in common. The argument, too, is founded on the idea, that adversary possession was a technical phrase, which it was necessary to find in terms. The act does not use the term, and I am not satisfied that such is the law. Equivalent terms may bring the possession within the act; and this verdict does find a possession, which must be adversary. It finds that the vendee took possession under the sale, and has continued in possession ever since, claiming the land as his own property. The verdict does not inform us that Henderson and Clarke acted in the character of guardians, and the sale was certainly one which, as guardians, they could not make rightfully.[4] I do not, then, consider the general law, which is applicable between coparceners, or tenants in common, as applying in this case.

The counsel for the defendant contends, that the lessors of the plaintiff constitute but one heir, and that as one of them is barred by the act of limitations, all are barred. As one of them cannot be brought within the savings of the act, those who do come within it, cannot avail themselves of the exception in their favour. It has already been said, that this construction would defeat the obvious intention of the act. A person, whose right is expressly saved for his own benefit, would be deprived of that right by the negligence of another, over whom he had no control. One of the coparceners might have been of full age when the cause of action accrued, so that as to him, the time would run from the entry of the defendant. The exception, then, in favour of the parties, in whose favour the exceptions are made, would be of no avail. According to the principles maintained by the defendant, as they are understood, no partition could be made by the coparceners while out of possession. Their deeds are mere nullities, under the act prohibiting conveyances of pretended titles. This construc-

tion would certainly defeat the intention of the law. If it could be sustained, the separate demises laid in the ejectment would be erroneous, for one joint demise only could be sustained. But, although the title be joint, the interest is, to every intent and purpose, several, and does not survive. In reason, then, it would seem, that each coparcener might recover his separate interest. The case of Roe v. Rowlston, 2 Taunt. 441, is the very case, and must be declared not to be law, on the principles for which the defendant contends.

The cases cited from 4 Term Rep.[5] and [Fitzsimmons v. Ogden], 7 Cranch [11 U. S.] [6] are not applicable to this. They were decided, not upon the rights of the parties, but the form of the pleading. The parties pleaded jointly, and their plea was good or bad in the whole. The court must either have determined that a party, not within the exception, was brought within it by being joined with a person entitled to its benefits, or, that a person really within it, must lose its benefits, by having joined in the plea with a person not entitled to the protection of the bar. The plea was not good as to the person who could not bring himself within the exception, and being bad in part, was, on technical legal principles, declared to be bad in the whole. But this technical rule does not apply to this case. The lessors of the plaintiff, claim distinct rights, under separate demises. Nothing, in the form of the pleading, restrains the court from deciding according to the rights of the parties. The judgment, then, should be according to the legal rights of the parties; that the plaintiff recover six-sevenths of the land in the declaration mentioned; and that judgment, as to the other seventh, be entered for the defendant.

Judgment: This day came the parties, &c., and the matters of law arising upon the

---

[4] To constitute an adversary possession, the possession must be coupled with a claim of title. Without such claim of title, no naked possession, however long continued, will be considered adversary, and it will constitute no bar to those having the real title. Smith v. Burtis, 9 Johns. 180.

[5] Perry v. Jackson, 4 Durn. & E. [Term R.] 516.

[6] Marsteller v. McClean, 7 Cranch [11 U. S.] 156. Action for mesne profits by several plaintiffs against the defendant, after a recovery in ejectment. Defendant pleaded statute of limitations, and plaintiffs replied, that two of the plaintiffs "were femes covert, when the cause of action accrued, and have ever since continued femes covert,"—that another of the plaintiffs "was a feme covert,"—and that all the other plaintiffs were infants at the accrual of the action, and were still so at the commencement of the action. General demurrer and joinder to this replication. Per the supreme court. A replication should, of itself, contain a full and complete answer to the bar, and a joint plea, which is bad, affects, with its consequences, all the parties joining in it. Here, it might be true, that the third plaintiff "was a feme covert"; and yet, five years might have elapsed since the disability ceased. The rule was settled, that all the plaintiffs in a joint action must be competent to sue, citing and approving, Perry v. Jackson, 4 Durn. & E. [4 Term R.] 516, where it was held that a plea of the statute of limitations, which was good as to one partner, barred them both in a joint action. Demurrer to the replication sustained.

special verdict in this cause, having been argued, it seems to the court here, that the plaintiff is entitled to recover his term, yet to come of, and in, six-sevenths of the messuage and land in the declaration mentioned; and that he is not entitled to recover his term in the remaining seventh. Therefore, it is considered, &c., that the plaintiff recover against the defendant his term yet to come of, and in, six-sevenths of the messuage and land in the declaration mentioned, together with one cent, the damages by the jury assessed, and his costs, &c. And a writ is awarded the plaintiff, to the marshal of this district to be directed, to cause him to have possession of his term yet to come of, and to six-sevenths of the messuage and lands aforesaid.