Grimke, J.
As the plaintiffs, and those under whom they claim, have always been non-residents of this state, the question which arises is, whether the former are within the exception in the statute of limitations in favor of absentees.
This is the first time that this question has been made in the-courts of Ohio, which may seem remarkable, as controversies must have repeatedly arisen involving a consideration of the same point. But it frequently happens that principles the most firmly established entirely elude observation, until some startling controversy springs up, which rouses the mind to a survey of the whole field of dispute. In Perry v. Jackson, 4 Term, 516, Lord Kenyon remarks, as surprising, that it was the first time the question in that case had arisen in an English court, and yet it was one which could not have been of unfrequent *occurrence. Some accidental [515 circumstance suddenly drew the attention of the mind to it in that particular instance.
The saving clause in favor of non-residents is the same in the- *516 act of 1804 and in that of 1810. They both contain an exemption for persons “beyond sea,” at the time the cause of action accrued. And this term, beyond sea, has received a fixed signification in Ohio. It means persons out of the state, although they may have been in the United States. If it were confined literally to persons who were on the other side of the Atlantic, the consequence would be that individuals residing in Mexico or Buenos Ayres would be placed on the. same footing as those residing in the State of Ohio. I can not help thinking, however, if the question were a new one, that it would better promote ■ the ends of justice and public tranquility to say, as the courts of Pennsylvania have, that the statute referred simply- to persons who were beyond the bounds of the United States. A non-resident does not, like an infant, a person non compos, etc., labor under any disability to sue, either mental or legal. Information circulates so readily through every part of our country, that no one who possesses any ordinary degree of vigilance can be unapprised of his rights, and the absentee has the double advantage of being able to sue either in the federal or the state courts. The construction which has hitherto been given to the statute confers upon them a treble advantage; it permits them to lie by until property which was of no worth has acquired a very groat value, in consequence of the labors of residents, from-whom everything is then suddenly torn away.
One remark which I would now make, and which is more immediately to my present purpose, is that the construction which has actually been given to the law, is by no means founded on its literal meaning, but has been supposed to be in conformity with the intention of the legislature; in other words, it is admitted to be a sound maxim, that in ascertaining the meaning of a law, it is •often necessary to inquire what was the intention in framing it. 516] It is a principle which should be *made use of very -cautiously, but it'is one of undoubted force and application.
The statute which was of force when the present cause of action arose, declares that if any person or persons are beyond sea at the time the right accrued, every such person or persons shall have a -right to sue within twenty years after he or they come into the state. If the heirs of Elisha Whitney, the present plaintiffs, are within this exception as well as Elisha Whitney himself was, they .are entitled to recover, and that depends upon the determination *517 of a question which has been greatly agitated both in England, and this country, whether an heir can unite his disability with the disability of his ancestor; in other words, whether successive disabilities in different persons are within the true meaning of the statute of limitations.
The case of Stowoll v. Zouch, Plowd. 358, was the first in which the question was discussed, whether the exception in favor of infants was confined to the person to whom tho right first- accrued, or whether it was extended to the heir, who was an infant at the time the title descended to him. The case, we are told, was argued with great ability twice in the common pleas, and twice in the exchequer chamber before all the judges of England, and it was determined that tho exception extended only to such infants to whom the right accrued, and that no such right had at that time descended, for the ancestor was then alive; that the plaintiff being an infant when his father died, was of no consequence, because the exception expressly afforded the excuse of infancy to those only to whom the right first accrued. It was observed that if every heir should be allowed the full period of limitation after he arrived at twenty-one, the controversy might be delayed many hun - dred years, for the heir of the heir might labor under the same, or some other disability, and so on successively for several generations, and when tho titlo came ultimately to be tried, the evidence on which the defendant’s title was founded, would have been lost in obscurity. For tho sake, therefore, of the public repose, as well as in accordance with what seemed to *be the evident inten- [517 tion of tho legislature, the heir was denied the privilege of sheltering himself under his disability.
This case did not present an instance of successive disabilities, because the plaintiff’s father never himself labored under any disability. It is oí the same importance, however, as if it had, because it determines the material question who is the person who may take advantage of the exception, he to whom the right first accrued, or the person to whom it afterward descended.
But tho case of Doe v. Jesson, 6 East, 80, is similar to the present. Here the owner of the estate was disposessed when he was an infant; he died in infancy, leaving an infant sister his heir. And it was held that she was not allowed a period of twenty-one years after the death of her brother, within which to bring her ejectment. As remarked by Lord Ellenborough, the time al *518 lowed by the statute fox- making an entry might be indefinitely postponed if a different construction wore given ; “ that there was no calculating how far it might be carried by parents and children continuing under disabilities in succession.”
The case of Eager v. The Commonwealth, 4 Mass. 182, is a case of still greater importance, as it arose in our own country. The plaintiff was an infant, and before the termination of her infancy the disability of coverture accrued, but the court held that the disability which should have the effect of protecting the plaintiff, must exist at the time the right first accrued, and as this was not the case the statute was a complete bar. This case, it will be observed, goes further than oven the last. Mr. Blanchard, in his treatise on the statute of limitations, remarks that “ successive disabilities in the same person will continue to him the protection of the statute.” But Eager v. The Commonwealth does not countenance that doctrine. And I think it may be asserted that whether successive disabilities exist in one and the same person, or in diffex-ent persons, the law is the same, and that it is only where several disabilities exist in one and the same person, and at the same time, that the statute affords a protection.
518] * *The doctx’ine taught in the above case has been confirmed by that of Bunce v. Wolcott, 2 Conn. 27, where a female heir being under age at the time the title descended to her, and having married before she arrived at the age of twenty-one, it was decided that she could take advantage of the saving of the statute in favor of infancy alone. If this wore not the true doctrine; if disability were permitted to lap over disability, there might be no tei’mination to many controversies. As Lord Eldon remarks: “ A right might tx-avel through minoidties for two centuries.”
But the most full and elaborate of all the eases is that of Demarest v. Wynkoop, 3 Johns. Ch. 129, where the same doctrine is expounded and enforced with masterly ability. Indeed, this must be considered as the settled and established law in England and in this country. There are but two cases that contradict it: Eaton v. Sanford, 2 Day, 523, which was afterward doubted in Bush v. Bradley, 4 Day, 298, and finally ovenmled in Bunce v. Wolcott, to which I have already referred. The other is the case of Cottrel v. Dutton, 4 Taunt. 826. It is entirely opposed, however', to the preceding English determinations as well as to the oninions of the profoundest lawyex-s in that country.
*519 But tho proviso in the statute of Ohio is not the same as in the English statutes, or in those of the other states to whose decisions I have referred. The statutes of limitation of Massachusetts, New York, and Connecticut are borrowed from that of James. It is this difference which creates the real difficulty in the case. If the proviso in our statute were the same as.in the last, we might stop and rest satisfied with the great weights of reason and authority which have been thrown into one of the scales. But as this is not the case we are constrained to go further, and to examine whether the difference is so great as to involve a totally different construction. In all the last-named statutes the period of limitation is prolonged in favor of persons living under any of the disabilities mentioned, although those disabilities existed at the time the right first accrued. Under one of these five, and under the others, *ten years may be added to tho twenty, so that in [519 some cases twenty-five, and in others thirty years, but never exceeding that period, may have run out before the bar -will finally operate. In other words, the infant, the non-resident, etc., are allowed five or ten years after their disability has ceased, notwithstanding the full period of twenty years has already expired. There is no similar provision in any of the statutes of Ohio until the year 1831, when, for the first time, the proviso in the statute of James, except so far as regards the case of non-residents, was endeavored to be imitated. But I think it clear that this difference does not make any sensible or just distinction between the case at bar and tho English and American cases. The true interpretation of our laws of 1804 and 1810 is, that twenty years, and no more, is allowed to the person or persons to whom the right first accrued, after their disability is removed. The words of those acts are, “that if any person or persons entitled to bring any of the actions enumerated, shall bo beyond seas, infants, non compos, etc., when any such action accrued, then they shall have a right to commence such actions within the time limited, after the disability has ceased ; and the question is not whether the law has still further prolonged the time in favor of the heirs of such persons, for that it evidently has not done; but whether the saving clause only extends to the persons to whom the right first accrued, without including their heirs or representatives. And here is another difference between the law of Ohio, and the English and New York statutes. In the two last, the word first precedes the words *520 accrued or descended, while in our statute it is entirely omitted. But the meaning of the clause is in reality precisely the same, whether that word bo inserted or not. The use of the words person or persons, it is clear, does not authorize us to say that it intends to speak of the several persons in succession, to whom the right may have fallen, for the English and New York statutes also contain that phraseology. The words person or persons are used merely because the right may accrue either to one person singly, 520] or to many persons jointly. And if the *word person only were used, then there could be no doubt that the person to whom the right accrued was the person to whom it first accrued, whether the word first was inserted or not; and that the word in the plural is afterward added, can not vary the signification, because, as I have already observed, that is merely for the purpose of indicating that there may exist a joint right in several persons as well as a single right in one person. But the statute of Massachusetts which gave rise to the decision in Eager v. The Commonwealth, is in this respect precisely like our own, the word first is entirely omitted; and yet this circumstance does not appear to have afforded a ground for any just distinction between their law and the statute of James. It is true no allusion is made to this difference, but it is to be presumed that it would have suggested itself to the learned judge who delivered the opinion if it was entitled to much weight.
I have already noticed another difference between the statute of Ohio and the English, and other American statutes. The last contain a proviso in favor of the heirs of the person to whom the right accrued, acldiDg five or ten years, as the case may be, to the period of twenty years. There are two classes of persons, then, to whom a right may accrue. First, the ancestor; second, his heir. The last only is entitled to the additional period, and his caso is provided for in the last part of the clause. The ancestor is provided for in the part which procedes, and therefore it is that the word first is from abundant caution inserted to indicate with absolute precision the order in which the several persons are entitled to the respective periods of twenty, twenty-five, or thirty years, as the case may happen. I say from abundant caution only, because the statute of Massachusetts contained the whole of this proviso in favor of the heir, and vet has omitted the word first.
*521 There is a still further difference between our statute and the others to which I have referred. The language in these last is this, “so as such person or persons, or his or their heirs, shall within ten years after full age, diseoverture, coming into the country, etc., or death, commence their action.” The *words or [531 death are omitted in our law; and this is supposed to have a most important bearing upon the subject. But those words are inserted in a part of the proviso, which is not contained in our law, and therefore could not properly have a place in this last. They are inserted to indicate the rights of those who are entitled to the additional period of ten years, and for no other purpose whatever, and-as this additional period is not afforded in the Ohio law, they aro necessarily not to bo found in it. In Doe v. Jesson, these words were referred to as governing the determination in that case. And very properly, for there the question was whether the infant heir of an ancestor who died in infancy was entitled only to ten years after his death, or whether the whole period of his own disability was not to be allowed, so as to give him the whole time of its continuance, and the ten years in addition. And it was held that he was entitled to ten years after the death of his ancestor, and not to ten years after his own disability ceased. It is evident, then, that these words could not be inserted in the same place which they occupy in the statutes of James, etc., because no such place existed in our statute.
But that the insertion of these words in the statutes of James and of the other states was unnecessary, is evident from the case of Stowell v. Zouch, which was decided upon the statute of Hen. 7, in which they are entirely omitted; and yet, as we have 'seen, this is the leading cáse in England, and contains the foundation of the whole law with regard to successive disabilities. The doctrine established in that case was that the exception extended only to such infants to whom the right accrued; that no such right had at that time descended to the plaintiff, because his father was then alive; that he was bound to make his claim before the expiration of the five years, and that the circumstance of his being an infant when his father died was of no avail, because the exception in the statute afforded the excuse to those only to whom the right first accrued. These words are also omitted in the proviso of the English statute which regards personal actions. And although I-am not aware of any decisions as to the effect of suc *522, 523 522] cessive ^disabilities where the cause of action is personal, yet it is evident from the last case, which places no reliance upon the omission of the word “death,” what such decisions would be. Indeed, it is an established principle that the several statutes . of limitation, being in pari materia, ought to receive the same construction, although the phraseology in all may not be exactly the same.
From every examination which I have been able to give to this very intricate subject, and I have endeavored to make that examination as thorough as possible, in consequence of the great importance of the questions involved, I am of opinion that the statute of Ohio, equally with the English and the other American statutes, lends no countenance whatever to the doctrine of successive disabilities. If this interpretation is not given, the bar of the statute can never take effect. Elisha Whitney lived abroad and died abroad while this disability existed. The difficulty, then, is infinitely greater than was apprehended in the several cases I have referred to. There it was said that the title might float through a whole century if disability were permitted to be added to disability. But in this case, death having intervened during the existence of the disability, this can never cease, but will literally run on to infinity. This is a consequence too monstrous and absurd to be admitted, and never could have been within the intention of those who made the law. The omission of the words “ or death ” renders the proviso in our law more, instead of less, restrictive, as I have shown ; and this circumstance, together with the fact that the advantage of the disability is given to the person to whom the right accrues, and not to his heirs, shows that the death of the ancestor must be deemed to be an extinguishment of the right — at any rate after the full period of twenty years has run out, counting from the commencement of the adverse possession. If the statute were not sufficiently clear without, we should be absolutely compelled to give it this interpretation, otherwise a law without a parallel would be found in our statute book. Statutes of limitation have, with very great reason, been termed statutes of repose. But if any different construction 523] *were given to our law, instead of being a statute of repose it would be one of perpetual disquietude.
It is evident, from the preceding view, that the whole difficulty and embarrassment which surround the case, arise from the *524 total omission of an important part of the proviso contained in the statute of James. The consequence is, that the death of a person while laboring under disability, is entirely unprovided for. The only alternative, then, to which we can cling, is to say that such person stands upon the same footing as residents of the state, and that the lapse of twenty years from the time the cause of action accrued, will be a bar to the assertion of the right. To say that it shall be twenty years from the death, will be going even beyond the statute of James, in which express provision is made for extending the period, not however to twenty, but only to ten years, and without which provision this advantage could not, by construction, have been given to the heir. Even the act of 1831 is entirely silent as to the case of a person dying under disability ; and it is for that reason that I have said it has endeavored to imitate, not that it has actually imitated, the statutes of James and of the other states. It has prolonged the period of limitation, but n ot in favor of the heir. These repeated acts of legislation distinctly manifest throughout the intention of the legislature. Death is a casus omissus, and as there is no “inherent equity” growing out of the statute of limitations, 'in favor of persons under disability, and not actually provided for, we must say that death, combined with the lapse of twenty years, operates a total extinction of the right. Judgment for the defendants.