# Rankin *against* Tenbrook.

In an action of ejectment, the declarations of a deceased tenant, made while he was in possession of the land, respecting his tenancy, are competent evidence. So also letters written by a tenant in possession to the plaintiff may be given in evidence, subject to the opinion of the court as to their legal effect.

A party out of possession of land cannot avail himself of successive disabilities, to avoid the effect of the statute of limitations.

ERROR to the common pleas of *Mercer* county.

This was an action of ejectment by Richard Tenbrook and Sophia his wife, against William S. Rankin and Boon M'Millen, to recover a tract of land. The facts of the case are stated in the former report of it. 5 *Watts* 386. The bills of exception taken in the court below, are particularly stated in the opinion of the court.

*Sullivan,* for plaintiffs in error.
*Pearson,* for defendants in error.

The opinion of the Court was delivered by

HUSTON, J.—This cause was in this court before, and is reported in 5 *Watts* 386. At that time the cause was put on a single point, and now on two points; and we had then but a small portion of the evidence, and now much less of it; and if we proceed in this way it may travel to this court and back again for some years to come. There have been instances in which a great mass of testimony has been put on the record and sent here, when the only error was to the admission or rejection of a deed, on the question whether the execution of it was duly proved; and this court in such case has said, the record was encumbered with much useless matter. There are, however, many cases in which, to decide correctly, it is necessary, both in the common pleas and this court, to take a view of the whole cause; and a just result as to the law in all cases is attained only by a view of the whole case; *ex facto oritur jus.*

The plaintiffs showed that the title, in 1785, was in Captain H. Becker, and that one of the plaintiffs was his only child: that Becker died in 1793: had other children, all dead without issue: but showed no proof of any possession or even inquiry about this land, until since 1820. This suit is brought to November term 1833. Plaintiffs intermarried in the autumn of 1804.

[Rankin v. Tenbrook.]

The defendants opened a defence, stating that Colonel Campbell, who died between 1813 and 1818, claimed the land, and had the possession of the original patent: that one Nicholas Walker went on to the land in 1803, and continued six or seven years, and transferred the possession to one Byers: that Judge Brown had been appointed agent by Colonel Campbell, and leased the land to Byers, and then to David Clingan, who went on under this lease.

The court received the proof that Walker went on the tract in 1803, and resided there until 1809 or 1810, when Byers went on it, and occupied it three summers, and left a crop of rye in the ground when he left it.    That Byers came into possession under Nicholas Walker, and then leased from Brown, the agent of Campbell. Defendants then asked what Nicholas Walker said about his right, whether he stated, that he held the land under Colonel Campbell, or claimed it as his own.    This question was objected to and not admitted, and a bill of exceptions sealed.    Nicholas Walker was admitted to be dead.    As it is not usual to state, on what ground testimony was rejected, we are at a loss to conjecture why this decision was made, and the declarations of a person in possession of, or claiming lands, made during his possession, or the continuance of his right, are generally evidence.    It may be, that declarations of a tenant as to the nature of his possession made after suit pending, or even after a dispute has arisen, are not evidence in favour of himself, if a party in the cause, nor, in some cases, for the person claiming to be landlord.    There may be cases too, arising on the construction or duration of the lease, in suits brought on the lease, in which the lease, if in existence, must be produced. When we consider how often it has been settled, that a man once a tenant, continues in that relation, until some act be done denying the right of his landlord, and twenty-one years adverse holding, or until he removes from the land, and this, whether his lease was by parol or in writing, whether for one year and then he holds over, or whether for many years, and written; and that in this case, the question is, whether he was a tenant or not, and that in the case before us, the fact, that he was tenant, was alone material; and that a parol lease proved for this purpose, was, if believed, as good and effectual as a written one produced, we must conclude the testimony ought to have been admitted; a third person present when it was made, could have proved it.    The declarations of Walker when in possession, if he made any such, were against his interest at the time he made them; so of his declarations when he entered, and while he resided on the land, and when he parted with his possession.    This matter has been of constant occurrence in our courts, during my recollection, for more than forty years. In the frontier settlements, written leases were at one time not very common, and when it has been material to prove long possession by successive tenants who are dead, or who have removed to some western state, it has been the constant practice to prove by some

[Rankin v. Tenbrook.]

persons, who live near the property, who were the successive tenants and that they openly stated themselves to be tenants; and I do not recollect to have heard it objected to. In England, written leases are more common than here, yet there, the declarations of a deceased tenant, that he held the land under a particular person, are admissible to prove the seisin of such person. 1 *Stark. Ev.* 70; cites 4 *Taunton* 1s. Such declaration, particularly in this case, is against his interest. What a man says, when he does a thing, shows the nature of his act, and is a part of the act; it determines its character and effect. Tenancy is a continuance of acts, in a certain relation to another, and declarations during the tenancy, by a man that he is a tenant, and of a particular person, may be put as part of the *res gestæ;* I do not speak here of declarations after suit brought, such may in some cases be evidence, but are more objectionable.

As I understand the case, Judge Brown had proved that he, as agent of Colonel Campbell, had leased the land in question to D. Clingan, but that it was by parol; plaintiff offered to prove, by Doctor Mitcheltree, that Clingan said he held the land for himself, and was to have one hundred acres of it, by an agreement with Tenbrook. This was objected to, but admitted. I have been unable to discover why the declarations of a deceased tenant, as to whom he held under, were rejected, and the declarations of a living tenant, as to his tenure, were received; it is not stated whether these declarations were made while he was tenant or since; if intended to contradict the testimony of Judge Brown, D. Clingan should have been examined on oath; if he is really a party entitled to one hundred acres if plaintiff recover, it is offering the declarations of a party interested, as evidence for himself; if he threw off his connection with Campbell and Brown, he, if examined, could prove that he gave notice of this. Although I cannot say it would not be evidence, under any circumstances, there does not appear enough in the statement of the facts to say it was properly admitted.

The next bill of exceptions, is to the admission of two letters of D Clingan, of dates of the 23d of June 1827, and of the 30th of June 1830, from D. Clingan to the plaintiff; of these it is sufficient to say, that if a written lease, duly proved, from Campbell, or his agent, to Clingan, had been produced, his attornment to another would be simply void, and give no right to that other, unless after great lapse of time, such attornment, if *known to his former landlord,* and nothing done, no rent demanded, and no measures to remove him, for twenty-one years, might have had a decisive effect on the cause. As no written lease to Clingan was, as I understand the case, produced, I do not see how the court could refuse permitting them to go to the jury, with instruction, that if they found that Clingan was the tenant of Campbell, they could have no effect in favour of Tenbrook.

Error is also assigned in the answer to certain points submitted

[Rankin v. Tenbrook.]

by the plaintiff's second point. The court answer the plaintiff's second point, " that unless there was evidence, proving under whom Nicholas Walker took possession of the land, his possession cannot be tacked to the possession of Byers and Clingan." As the court rejected all evidence offered on the subject, of the nature of Walker's possession, we cannot know what the proof will be. If he took possession under Campbell, or with knowledge of Campbell's claim, and a declared intention to become his tenant, or if he took possession, ignorant of Campbell's title, but afterwards became his tenant, his possession may be united to that of subsequent tenants, from the one period or the other, according to the proof.

On the third point, the court say, " if the jury are satisfied that Sophia Becker became a feme covert, in 1804, by her marriage with Richard Tenbrook, the statute of limitations, has not begun to run. The possession here commences with the possession of Byers, and long before, that she was a feme covert, and within the proviso in the 4th section of the act of limitations, of 1785." It is evident the possession of defendant may be ascertained to be at an earlier date. But this opinion brings into view an important question on this statute. All the decisions of the courts in England say there can be no successive disabilities. I am aware that some elementary writers have said that there may be successive disabilities in the *same person*, though they all admit there cannot be in *different persons*. Blanchard on Limitations, cites no decision for this opinion, and I have not found any. The general law in England, as to successive disabilities, will be found in Doe *v.* Jesson, 6 *East* 80, and 4 *Taunton* 829, where it is said, if there be, in all, twenty years adverse possession, no successive disabilities have any effect; such construction cannot be given to these acts, as that by successive disabilities they may not operate for a century.

This matter has been considered, 4 *Mass. Rep.* 182; 3 *Johns. Chan.* 129; 18 *Johns. Rep.* 40; and in this state, Thompson and others *v.* Smith, 7 *Serg. & Rawle* 209; and the decision in these courts has been, that the statute provides for only one disability, viz. when the estate first descends, and makes no exception for any subsequent disability, either in the same or a different person. In the case in 7 *Serg. & Rawle*, the estate descended to two infant daughters, both of whom married under twenty-one, and did not bring ejectments until more than ten years after they were of the age of twenty-one years; and further, it appears the adverse possession was taken some years after the death of their father; it does not appear whether before or after their marriage. Nor on the principles of that decision was it material. The act saves the estate in no disability except the one expressly mentioned, when it first descends or accrues. In Culler *v.* Matser, 13 *Serg. & Rawle* 356, it is said, if husband and wife are disseised, and no suit for twenty-one years, both are barred. It is true that is a barring of

her dower, but I apprehend it would be so if the land had been in her right.   The statute makes no exception for her in such a case, and it is said that from Stowel *v.* Zouch, in Plowden, the courts have in no case extended the saving clause beyond the cases mentioned in the act.   There is error in this part of the charge.

The plaintiff who claims the benefit of any one of the exceptions, must prove all the facts necessary to bring him within the exception.   I do not know that it will be material, but if it is, plaintiff must prove whether she was twenty-one years of age when she was married.

Judgment reversed, and a *venire de novo* awarded.