## Irvine *versus* Sibbetts.

Where a testator devised as follows: "I give unto my beloved wife Nancy during her lifetime or widowhood all my estate, real and personal, to be by her applied toward raising and schooling my children; and at her decease the remainder, if any, to be divided according to the laws of this Commonwealth, share and share alike, and in case she should see cause to marry, she is to have only her bed and bedding and an equal share with the children that may then be living out of my estate." It was *Held*, That the devise gave the widow the whole estate during her widowhood, and upon her subsequent marriage, an equal share with the children in fee simple.

That upon her marriage, her interest in the estate, except her equal share with the children, determined by the limitation contained in the devise, without entry or claim by those who had the next expectant interest.

The possession of the widow subsequent to her marriage, without any notice of a hostile claim to the children, or any act demonstrative of an adverse holding, would be considered as permissive and not adverse.

Where the widow, after her second marriage, joined with her husband in conveying the entire premises to a stranger, who placed the deed on record and took possession of the land, the possession became adverse to the children, and being continued for twenty-one years would bar their right of entry.

The death of the widow at a subsequent period gave no new right of entry to those to whom the estate accrued under the devise, upon her marriage.

ERROR to the Common Pleas of *Cumberland county*.

This was ejectment by William H. Irvine and Elizabeth his wife, in right of said Elizabeth, against Catharine Sibbetts, for an undivided interest in a tract of land in Southampton township, Cumberland county, containing about ninety acres.

The title to the premises in dispute was vested in Robert Coffey, Sr., who resided in Franklin, and who on the 29th day of March, 1800, made his last will and testament, and died soon afterwards. The will directed as follows:—

"I give unto my beloved wife Nancy, during her lifetime or widowhood, all my estate, real and personal, to be by her applied toward raising and schooling my children, and at her decease the remainder, if any, to be divided according to the laws of this Commonwealth, share and share alike; and in case she should see cause to marry, she is to have only her bed and bedding, and an equal share with the children that may then be living out of my estate, and the remaining executor or guardians of the children to take care of their parts, and I do hereby order, constitute and appoint my loving wife Nancy, and my trusty friend, John Reynolds, as executors to this my last will and testament, hereby empowering them, if they think fit, and get what they may judge a sufficient price for it, to sell and convey a small tract of land

[Irvine *v.* Sibbetts.]

belonging to me in Southampton township, Cumberland county, adjoining lands of my brother Thomas Coffey, John McLain, and others, containing near one hundred acres, be the same more or less, hereby giving them, or the survivor of them, full power to sell and convey, and to make, execute, sign, seal and deliver a conveyance or conveyances for the same in as full and ample a manner as I could do were I living and present, and the money that may be got for it to be laid out on other property or to the best advantage, except what may be necessary for keeping, schooling, and raising the children until they are empowered to call for it agreeable to the former part of this."

The will was proved on the 15th day of January, 1801, in Franklin county, and on the 21st day of March, 1802, Reynolds renounced, and letters testamentary issued to Nancy Coffey, the widow. The testator left surviving him Nancy, the widow, and five children, John, Thomas, Robert, Nancy, and Ruth, the youngest of whom came of age in 1819. The widow, after the death of her husband, took possession of the land, and lived on it, and in the year 1805 was married again to William McKnight. They continued to reside on the land till 1813, and then removed to an adjoining tract. It was occupied by tenants until the 28th March, 1822, at which time McKnight and wife conveyed it to to David Williamson, the brother-in-law of McKnight, for the consideration of $750. The deed refers to the will of Robert Coffey, and professes to convey under the power therein given.

Nancy, the daughter of testator, had, prior to the conveyance, intermarried with John Campbell, and Ruth with John Forsythe. Campbell and Forsythe were both present at the execution of the conveyance to Williamson. Forsythe objected to the conveyance, but became reconciled on Williamson giving him two notes for $100 each, and a horse for the share of his wife, being one-sixth. The deed was recorded on the 31st July, 1822. Shortly after, McKnight took a lease of the land from Williamson, and continued to use it as before. Williamson resided some ten miles distant from the land.

Prior to the conveyance to Williamson, the interests of John and Thomas Coffey, two of the sons, were levied and sold by the sheriff to James Clark, and a deed made to him for two undivided sixth parts of the land. Clark brought an ejectment for his interest in the land against Williamson, who defended under his deed, but a verdict and judgment were rendered in favour of the plaintiff, which was affirmed in the Supreme Court. (Reported in 2 *Rawle* 215.

William McKnight died in 1836, and after his death the widow received, through her agent, the rents of this land for several years. David Williamson died in 1830, and his heirs and administrator with the will annexed, conveyed the four undivided sixths

[Irvine *v.* Sibbetts.]

of the land to Thomas Sibbetts, on the 23d of October, 1841, and Clark conveyed the remaining two-sixths to the same person on 1st November, 1841.

Sibbetts died in 1851, and Catherine his widow, and the defendant in this action, was in possession at the bringing of this suit.

Elizabeth Irvine, the plaintiff in this suit, is the only child of Robert Coffey, Jr., and was born on the 26th November, 1814, and her father died in January, 1815. She was married to her present husband, William H. Irvine, in 1832. And this action is brought in her right to recover one undivided fifth part of the premises.

The principal questions in the cause were, whether the statute of limitations would run against the plaintiffs from the date of the conveyance, in 1822, or from the death of the widow of Robert Coffey, Sr., in 1844. And also whether the possession of David Williamson, under his deed, had been such an actual, open, notorious, visible, hostile, and continued possession as would, even if such possession commenced in 1822, give him and those claiming under him a title by the statute of limitations.

The court below (GRAHAM, P. J.) instructed the jury that upon the authority of Clark *v.* Williamson, 2 *Rawle* 215, the power of the executrix to sell under the will ceased with her marriage to McKnight, and particularly after all the children had arrived at twenty-one years of age. But that the plaintiffs could in no event recover more than one-sixth, as the widow, upon her marriage, took a child's interest in the estate, which would make it divisible in six shares, instead of five.

That the deed of McKnight and wife, in 1822, conveyed title to Williamson but to the one undivided sixth of the land. That the heirs of Coffey had a right of entry in 1822, and if the possession of Williamson and those claiming under him was actual, open, notorious, visible, and hostile, and continued for twenty-one years, or for ten years after the plaintiff arrived at majority, his title would be complete and perfect by the statute of limitations. His Honour summed up the instructions to the jury as follows:—

" The purchase of Williamson from McKnight and wife is an ancient transaction. It is more than thirty-three years since the deed was executed, and more than thirty years since the execution of the first lease from Williamson to McKnight, and we think it is as satisfactorily proved as transactions of ancient date are susceptible of, that the possession of Mr. Williamson, by his tenants and Sibbetts, and his heirs claiming since, has been continued and uninterrupted for that period. If you think so, the title thus acquired by Mrs. Sibbetts and her children ought not now to be disturbed, if, as we have said, the purchase by Williamson was an honest one. We think the history of this transaction shows the present controversy originated in mistake,

[Irvine *v.* Sibbetts.]

and not in fraud.   Mr. Williamson may have honestly thought
that McKnight and wife had the power to sell, and that by the
conveyance from them he acquired a good title.   So thought his
counsel in the ejectment brought by Clark, and so thought the
president judge of this court at that time, who presided more than
twenty years in this district, and sustained the character of a
sound jurist.   But Mr. Williamson, his counsel, and the court
were in error, and that error was corrected by the Supreme Court.
If the plaintiffs have rested upon their rights until time has per-
fected the imperfect title of Mrs. Sibbetts and her children, they
ought not to complain of a loss incurred through their own negli-
gence."

The jury found for the defendant.

The plaintiffs removed the cause to this court, and assigned the
instructions of the court below for error.

*Wm. M. Penrose* and *Colwell*, for plaintiff in error.

*Williamson, Hepburn,* and *McClure*, for defendant in error.

The opinion of the court was delivered by

LEWIS, C. J.—The plaintiffs claim an undivided fifth part of
the land in controversy by inheritance from Robert Coffey, Sr.
The defendant claims under a conveyance from his widow and
executrix, purporting to have been executed in pursuance of a
power in the will.   This conveyance was made to David William-
son on the 28th March, 1822, and the jury have found that the
possession under it has " continued for the period of twenty-one
years," and that it has been " actual, open, notorious, visible, dis-
tinct, and hostile or adverse" to the title claimed by the plaintiffs.

The plaintiffs contend that the widow had a life estate under
the will—that her marriage to William McKnight in 1805 was a
forfeiture, which gave the plaintiffs, and those under whom they
claim, a right of entry at their election, but that they were not
bound to enter for the breach of the condition until after her
death in 1844, and that the latter event gave them a new right of
entry, on which they may maintain this ejectment notwithstanding
the long possession under which the defendant claims.

According to our construction of the will, it gave the widow
the whole estate during her widowhood, and in the event of her
marriage, an equal share with the children in fee simple.   It is
true that an estate *durante viduitate*, or for any like uncertain
time, in count or pleading, may be set forth in general terms as a
life estate: *Co. Lit.* b. 1 c. 6, s. 56 and 57.   But it is also true
that the proper description of a life estate is " where a man letteth
lands or tenements to another for the term of the life of the lessee,
or for the term of the life of another man.   In this case the

[*Irvine v. Sibbetts.*]

lessee is tenant for term of life. None other of a lesser estate can have a freehold." "But if a man grant to a woman *dum sola fuit*, or *durante viduitate*, or for any like uncertain time, the lessee hath in judgment of law an estate for life *determinable*, if livery be made:" *Ibid*. In the case before us, the widow had a life estate *determinable* upon the contingency of her marriage, with a contingent limitation to herself and her children as tenants in common in fee simple: Buckworth *v.* Theskell, 3 *B. & P.* 652, note. It is sometimes called a conditional limitation: Bennett *v.* Robinson, 10 *Watts* 350. But the name is not material to the present question, as, in either case, " the estate was spent by the contingency of her marriage even without entry by the heir or devisee over:" 10 *Watts* 350. There is a distinction between a *condition* that requireth a re-entry and a *limitation* that *ipso facto* determineth the estate without any entry: *Co. Lit.* b. 3, ch. 5, s. 215. " The material distinction between a condition and a limitation consists in this, that a condition does not defeat the estate, although it be broken, until entry by the grantor or his heirs." " But it is in the nature of a limitation to determine the estate when the period of limitation arrives, without entry or claim, and no act is requisite to vest the right in him who has the next expectant interest:" 4 *Kent's Com.* 126–127. An estate for life was, by the common law, subject to a condition in law that the tenant for life shall perform the due renders and services to the lord of the fee, of which fealty was constantly one. An alienation of a greater estate than he had was therefore a cause of forfeiture, because, among other reasons, it amounted to a renunciation of the feudal connexion and dependence, and implied a refusal to perform the services, and tended in its consequences to defeat and divert the remainder or reversion expectant: 2 *Black. Com.* 274–275; 4 *Kent* 82. But in Pennsylvania a conveyance by tenant for life, of a greater estate than he possessed or could lawfully convey, passes only the title and estate which the tenant could lawfully grant: McKee *v.* Prout, 3 *Dall.* 486. It follows that a new right of entry accrues, upon the death of the tenant for life, against which the previous possession is not pleadable in bar. But in the case before us the life estate was determinable by the very terms of its creation. It was determined by the marriage of the widow in 1805. At that time Robert Coffey, the son of the testator, had a right of entry, but he did not avail himself of it. On the 26th November, 1814, Elizabeth, his daughter, in whose right this suit is brought, was born. In 1815 her father died. The possession of the widow might fairly be considered as permissive, and not adverse until she joined in the conveyance to Williamson in 1822. From that period the indications of an adverse possession by Williamson were too plain to be disregarded. Elizabeth Coffey being then under age, was entitled to ten years.

*[Irvine v. Sibbetts.]*

after that disability was removed, to bring her action. In 1845, if the possession was adverse, her right was barred. She could not tack the disability of coverture to that of infancy: Weddle *v.* Robertson, 6 *Watts* 486; Rankin *v.* Tynbrook, 6 *Watts* 388, 391; Carlisle *v.* Stitler, 1 *Pa. Rep.* 6; Thompson *v.* Smith, 7 *Ser. & R.* 209.

· But it is supposed that the plaintiffs, or those under whom they claim, ought to have been notified of the adverse holding. This might be necessary in order to convert the possession of a trustee, or the widow who stood in that character, into a hostile holding. But where the widow executed a conveyance to a stranger and delivered up the possession to him, and that act is found to be " open, notorious, and visible," direct notice to the party affected by it is not necessary: Dikeman *v.* Parrish, 6 *Barr* 225, 227.

Conceding that the conveyance was in violation of the trust, and that the recitals might lead the vendee to a knowledge of the fact, this is not such a fraud as can deprive the latter of the defence under the statute of limitations. The violation of the rights of the owner was as open as the conveyance and possession. There is no evidence that it was fraudulently concealed. On the contrary, two of the heirs were present at it. A person claiming the title of two others made it the subject of judicial investigation in the Supreme Court in 1828. These facts, and the notoriety of the possession, the assessments, the recording of the deed—were matters sufficient to arrest the attention of the remaining heir.

On the whole, we see no error of which the plaintiffs have any just cause to complain.

Judgment affirmed.