PROBST *v.* TRUSTEES OF THE BOARD OF DOMESTIC MISSIONS OF THE
GENERAL ASSEMBLY OF THE PRESBYTERIAN CHURCH IN
THE UNITED STATES OF AMERICA.

Filed January 29, 1885.

1. ADVERSE POSSESSION—EVIDENCE—CHARACTER OF POSSESSION.
    In an action of ejectment, where the defense is the statute of limitations,
    evidence that the defendant went upon the land for the purpose of raising
    one or two crops, together with vague testimony that he claimed the land,
    there being no evidence of residence, improvement, inclosure, customary
    cultivation, or other use showing continued actual appropriation, is insuffi-
    cient to establish the character of his possession as adverse, especially where
    his own testimony indicates that in going upon the land he merely mistook
    his boundary.

2. SAME — RELIGIOUS CORPORATION — FAILURE TO FILE CORPORATION PAPERS—
    EFFECT AS TO POWER TO SUE.
    The fact that a religious corporation had not, previously to the commence-
    ment of a suit, caused the papers and certificates required by chapter 3 of the
    Laws of 1880 to be filed in the office of the secretary of the territory, does not
    debar it from access to the courts in protecting its previously vested estate in
    the territory.

3. SAME—SECONDARY EVIDENCE—FOUNDATION.
    In a case of disputed title, one of the litigants being a religious corporation,
    proof should be obtained directly from the corporate office, in which the cor-
    porate papers are usually kept, before admitting secondary evidence of docu-
    ments presumed by law to be in the corporate custody.

4. SAME—PAPER TITLE NOT NECESSARY IN DEFENSE AGAINST TRESPASSER.
    A regularly derived paper title is not necessary for recovery against a defend-
    ant who, without title, has intruded upon a prior possession.

5. SAME—CORPORATION HOLDING LAND BY AGENT — PRESUMPTION FROM FACTS.
    The fact that a Presbyterian clergyman, recognized as such, claimed to hold
    certain specific property in Santa Fe for a religious corporation in New York;
    that said corporation could not, on account of its distance, occupy its lands ex-
    cept by means of servants, agents, tenants, or other representatives; the state-
    ments of such clergyman, and his position in Santa Fe,—raise a strong presump-
    tion that he was acting for the plaintiff corporation, and that his possession
    was the possession of the corporation.

Error to the First district, Santa Fe county.

*Catron, Thornton & Clancy,* for plaintiff in error.

*Gildersleeve & Knaebel,* for defendant in error.

WILSON, J. The corporation (plaintiff below) claims to have ac-
quired title to the *locus in quo,* accompanied by actual possession, in
April, 1870. The defendant below controverts the corporate title,
denies its capacity to sue, and sets up the statute of limitations. The
plaintiffs, in the district court, introduced in evidence, under objec-
tion, the records of several conveyances, showing a regular chain
of title to the *locus in quo,* beginning with a conveyance by one
Lovato, who was in possession of the land as early as 1846, and
continuing through several mesne conveyances to the plaintiff, whose
immediate grantor was, according to the record on the recorder's
books, Daniel T. McFarland. McFarland's deed to the plaintiff
was recorded April 25, 1870. The defendant below testified that he

went into possession of the *locus in quo* in the spring of 1871, and had continued in such possession ever since. It appears, however, that McFarland lived in a house upon contiguous land, exercised acts of ownership upon the premises in question, and occupied them prior to the defendant's entry, and that, about the time of recording the alleged deed to the plaintiff, he claimed to hold the premises in their behalf. McFarland was in under legal title extending over the whole of the *locus in quo*, and, upon familiar principles, the possession thus held would be presumed to continue until the establishment of an adverse possession within the meaning of the law. A mere trespass, not amounting to a disseizin, does not constitute adverse possession in such sense as to set the statute in operation. A trespass must be hostile, open, notorious, clearly defined, exclusive, uninterrupted, and under claim, real or pretended, in order to make the statute available to the intruder.

The evidence in this case is insufficient to establish an adverse possession continued during 10 years. It is not enough for a party to prove that he has been in possession in general terms. Mere possession does not satisfy the statute. It is the nature and circumstances of the possession that are controlling in such cases. Nothing can be implied in favor of a wrong-doer who bases a claim on his own wrong. If he seeks to gain an estate by his own hostile acts, without title, he must affirmatively prove the existence of all the conditions necessary to the achievement of that result. Here the evidence discloses no specific facts indicating adverse possession, except going upon the land for the purpose of raising one or two crops, unless we regard the vague testimony as to the defendant's claiming the land in the same light. There was no residence, no improvement, no inclosure, no customary cultivation, or other use, showing a continued actual appropriation. The facts are much weaker as evidence of adverse possession than those proved in the case of *Baldwin* v. *Simpson*, 12 Cal. 560, wherein the court held the possession not to be adverse in the sense of the statute. The doctrine on this subject is well settled, and it is maintained in several of the cases cited in the brief of the plaintiff in error. Moreover, if we regard the *quo animo* of the entry, as disclosed by the defendant below in his own testimony, it appears that he had title papers to adjoining land, first as mortgagee and afterwards as vendee, and that in going upon the *locus in quo* he merely mistook his boundary. This negatives the idea of an adverse possession under the circumstances of this case. The defendant's own title papers made the land of McFarland his southern boundary, and in the endeavor to ascertain that boundary, the defendant might ignorantly have transgressed it. *Brown* v. *Cockerell*, 33 Ala. 45; *Howard* v. *Reedy*, 29 Ga. 152; *Calhoun* v. *Cook*, 9 Pa. St. 226, 228; Tyler, Ej. 886; and other cases cited on the brief of the defendants in

error. Upon the merits, therefore, we believe the verdict against the defendant below to be proper.

The plaintiff in error seeks a reversal of the judgment upon the assignment of several errors in the rulings of the court below. He objected, and excepted to the charge of the court in the following terms: "To the giving of each of which said instructions defendant then and there duly objected, but the court overruled said objections, and defendant then and there duly excepted to the ruling and decision of the court in overruling said objections and giving said instructions to the jury." On the assignment counsel have called our attention to some parts of the charge that seem to be too favorable to the plaintiff below, but in our view of the merits, as disclosed by the record, we cannot relax the rule requiring such exceptions to be specific. They are entirely too broad to be available in this court. *Territory* v. *Yarberry,* 2 N. M. 391; *Lincoln* v. *Claflin,* 7 Wall. 132; *Mobile & M. Ry. Co.* v. *Jurey,* 111 U. S. 584; S. C. 4 Sup. Ct. Rep. 566; *Caldwell* v. *Murphy,* 11 N. Y. 416. Exceptions in better form are made to the refusal to give certain instructions asked for by the defendant below; but all that is legal or appropriate to the case in these instructions was substantially given to the jury in the instructions charged. *Laber* v. *Cooper,* 7 Wall. 565.

The defendant below also excepted to the admission of proof of the corporate charter, on the ground that the corporation had not, previously to the commencement of the suit, caused the paper and certificates required by chapter 3 of the Laws of 1880 to be filed in the office of the secretary of the territory. We do not construe this statute, either in its terms or in its intent, as operating to debar a corporation, which fails to make the filing mentioned, from access to the courts in protecting its previously vested estate in the territory. It is, therefore, unnecessary to inquire how far the corporation has, in fact, made the filing. *Utley* v. *Clark-Gardner L. M. Co.* 4 Colo. 369; *National Bank* v. *Matthews,* 98 U. S. 628; *Whitney* v. *Wyman,* 101 U. S. 397; *White* v. *State,* 69 Ind. 279.

More serious questions arise upon the objection to the admission of the records of the deeds under which it is claimed that the plaintiff below became vested with the title in the *locus in quo.* The originals were not proved to be lost, and the only evidence tending to show that they were not in the custody of the plaintiff was the testimony of Dr. Eastman, its agent in New Mexico, who testified, in substance, that he did not have them, and, so far as he knew, they were not in the possession or control of the plaintiff, but who, on cross-examination, further declared that he did not know whether or not they were in the plaintiff's office in New York; although it is suggested by counsel for the defendant in error that Dr. Eastman may be presumed to be the proper custodian of the papers pertaining to the corporation's New Mexico property, and that the force and effect of his testimony were to be determined by the trial court in its dis-

cretion; in support of which latter proposition he refers us to *Janes* v. *Martin*, 7 Vt. 92. We are unwilling to accept this view of the nature of such preliminary proof. While courts should be more indulgent towards the proofs made as preliminary to the introduction of an official record than towards the proof offered as a foundation for oral testimony respecting missing documents, (*Smith* v. *Martin,* 2 Tenn. 209; *Jackson* v. *Dillon's Lessee*, Id. 261; *Newson* v. *Luster*, 13 Ill. 180,) yet we think that, in a case like the present, proof should be obtained directly from the corporate office, in which the corporate papers are usually kept, before admitting secondary evidence of documents presumed by law to be in the corporate custody. This presumption exists as to the deed from McFarland to the corporation. The antecedent deeds are not, however, presumed to be in the control of the corporation. The presumption is that they are in other hands; and we accordingly hold, in harmony with the courts of Missouri, from which state our law on the subject was derived, that the records of the deed to McFarland and of the prior deeds, as well as of the deeds under which the defendant below claimed the adjoining property, were admissible as primary evidence. *Walker* v. *Newhouse,* 14 Mo. 373; *Barton* v. *Murrain*, 27 Mo. 238; *Boyce's Trustees* v. *Mooney*, 40 Mo. 104; *Eaton* v. *Campbell*, 7 Pick. 12; *Scanlan* v. *Wright*, 13 Pick. 527; *Com.* v. *Emery*, 2 Gray, 81. Whether, however, the judgment should be reversed because of the admission of the registry of the McFarland deed to the corporation, is to be determined by the relation that registry has to the case as it appears on the whole record. If this belonged to the class of cases in which a regularly derived paper title is necessary to be shown as a condition of recovery, the objection under consideration would be fatal. But title of such dignity is not necessary for recovery against a defendant who, without title, has intruded upon a prior possession. In such case, the mere fact of prior possession in the plaintiff is a sufficient title for the maintenance of the suit. *Christy* v. *Scott*, 14 How. 290, 292; *Burt* v. *Panjaub*, 99 U. S. 182; *Campbell* v. *Rankin*, Id. 262.

McFarland, a Presbyterian minister, was in possession of the *locus in quo*, claiming to hold it for the Presbyterian board at the time of the entry complained of. The *situs* of the corporation was on the Atlantic seaboard. It could not occupy its lands in this territory except by means of servants, agents, tenants, or other representatives. The declarations of McFarland while in possession, and his position in Santa Fe as a Presbyterian minister, raise a strong presumption that he was acting for the plaintiff corporation, and that his possession was the possession of the corporation. A trespasser has no right to call upon a prior possessor for better proof of title. It is enough to say that a declaration of McFarland as to the nature of his possession, which is good enough *prima facie* against him or his privies, (*Hiester* v. *Laird*, 1 Watts & S. 249; *Jackson* v. *Bard*, 4 Johns. 233; *Rankin* v. *Tenbrook*, 6 Watts, 390; *Stanley* v. *Green*, 12 Cal. 163,)

is good enough against a mere trespasser. *Bradley* v. *Spofford,* 3 Foster, (N. H.) 444. In this connection, the record of the deed to the corporation was admissible, not as proving the deed, but as proving a corporate act; the fact of registry tending to characterize and assert the claim of the corporation in accordance with this declaration of McFarland.

In this view, the fact of causing such a registry of title to be officially made, contemporaneously with such declaration of the party occupying the land, is like the fact of paying taxes, or others of the class of facts which, though they do not prove title by themselves, aid as links in a chain of evidence tending to that end. An instrument, imperfect as a conveyance, may be admissible to explain possession, and show extent of boundaries and claim; and declarations of parties in possession, especially when self-deserving, are well-recognized forms of evidence respecting the character of a possession, under the rule of *res gestæ.* In *Evans* v. *Board Trustees W. & E. Canal,* 15 Ind. 319, the only title shown in trespass was the recognition of the plaintiff as owner in certain official lists of the state, and in subsequent statutes, not importing a grant; and it was contended by the defendants, on appeal, that this evidence was insufficient to show title. The court, regarding the question as whether such evidence of title, although it might be valid as between the state and her bondholders, could be given against the defendant, held that there was no error of which the defendant below could complain, and that, *prima facie,* there was a case made against them.

Upon the whole case, we see no substantial error, no prejudice to the defendant below, and we therefore affirm the judgment.

BELL, J., concurs.