## UTLEY et al. v. THE CLARK-GARDNER LODE MINING Co.

1. Sec. 213, Gen. Laws, requiring foreign corporations, before they shall be permitted to do business in this State, to file a certificate with the secretary of State, etc., is intended to enforce section 10, article 15 of the State Constitution, and is not in conflict with the Constitution of the United States.

2. A corporation is the creature of local laws. For the recognition of its existence and the enforcement of its contracts without the limits of the sovereignty which created it, it is dependent upon the comity of the several States.

3. The statute is prohibitory in its terms, but the failure of a foreign corporation to comply with its terms, however it may affect its right to hold and enjoy property in this State, does not affect its capacity to sue.

4. A plea in abatement going only to the power of a foreign corporation to maintain its action for trespass, *held* bad on demurrer.

5. When a demurrer is sustained to a plea in abatement and the defendant fails to plead over, he will not be permitted, in an action of trespass *vi et armis*, to prove in mitigation an entry under color of title, nor is he entitled in such case to interpose any substantive defense.

### *Appeal from District Court of Gilpin County.*

THE case is stated in the opinion.

Messrs. BELFORD & REED, for plaintiffs in error.

Mr. L. C. ROCKWELL and Mr. H. B. MORSE, for defendants in error.

ELBERT, J. August 25, 1877, the Clark-Gardner Mining Company of New York filed a declaration in trespass containing two counts. The first count charges the breaking and entering upon claims Nos. 7, 8 and 9 of the Gardner lode and breaking ore, etc. The second count is *de bonis asportatis*.

The defendants filed the following special plea: "And the said Alvin H. Utley and John Burkhardt, by Belford and Reed, their attorneys, come and defend the wrong and injury, when, etc., and pray judgment of said writ, because they say that the said Clark-Gardner Lode Mining Com-

| 4 | 369 |
|---|---|
| 11 | 429 |

| 4 | 369 |
|---|---|
| 19 | 314 |

| 4 | 369 |
|---|---|
| 9a | 125 |

| 4 | 369 |
|---|---|
| 11a | 269 |

| 4 | 369 |
|---|---|
| 27 | 38 |

| 4 | 339 |
|---|---|
| f38 | 118 |

pany is now, and was at the commencement of this suit, a foreign corporation, and that said Clark-Gardner Lode Mining Company at the time of the commencement of this suit had not filed in the office of the secretary of State of the State of Colorado, and in the office of the clerk and recorder of the county in which its business is carried on, a certificate signed by the president and secretary of such corporation, duly acknowledged and designating the principal place where the business of said corporation shall be carried on in this State, and designating an authorized agent or agents in this State residing at its principal place of business, upon whom process may be served, and did not at the time this suit was commenced have any known place of business and an authorized agent or agents in the same upon whom process might be served ; and this the said defendants are ready to verify, wherefore they pray judgment of the said writ in this suit, and that the same may be quashed," etc.

To this plea, the plaintiff below demurred, the demurrer was sustained, and the defendants stood by their plea.

Section 213, General Laws, p. 151, upon which the plea is based, is as follows :

"Foreign corporations shall, before they are authorized or permitted to do any business in this State, make and file a certificate signed by the president and secretary of such corporation, duly acknowledged, with the secretary of State, and in the office of the recorder of deeds of the county in which such business is carried on, designating the principal place where the business of such corporation shall be carried on in this State, and an authorized agent or agents in this State residing at its principal place of business upon whom process may be served." * * *

This provision is intended to enforce section 10, article 15 of the Constitution, which declares: "No foreign corporation shall do any business in this State without having one or more known places of business, and an authorized agent or agents in the same, upon whom process may be served."

State legislation of this character is held not to be in conflict with that clause of the Constitution of the United States which declares "the citizens of each State shall be entitled to all the privileges and immunities of citizens in the several States;" nor with the clause which declares that Congress shall have power "to regulate commerce with foreign nations and among the several States."

A corporation is the creature of local laws; it has no existence or absolute right of recognition outside the limits of the sovereignty which created it.

For the recognition of its existence and the enforcement of its contracts without such limits, it is dependent upon the comity of the several States, and this comity may be extended upon such terms and under such limitations as each State may think wise to prescribe. *Augusta* v. *Earle*, 13 Peters, 538; *Paul* v. *Virginia*, 8 Wall. 168.

The Constitution and statutory provisions cited, embody the policy of our State toward foreign corporations. The statute prescribes the terms and conditions upon which they may transact business within the State upon an equal footing with domestic corporations. They shall designate, in a manner prescribed, their principal place of business and an agent or agents residing thereat, upon whom process may be served. In substance, they shall put themselves in a position to be amenable to the process of the State courts. Similar statutes exist in most of the States of the Union, the object being to protect the citizens of the State, dealing with foreign corporations, from the hardship of pursuing their rights in distant jurisdictions.

The terms prescribed cannot be justly characterized as harsh or onerous; on the other hand, they are simple and equitable, and upon compliance the doors are thrown wide open to foreign capital, represented by foreign corporations, to compete in the various industries and businesses of the State, upon an equal footing with domestic corporations.

The statute is prohibitory in its terms. They *shall* file

the designated certificate "before they are authorized or permitted to do any business in this State."

The Oregon statute, substantially like this, is held to be prohibitory. *In re Comstock*, 3 Saw. C. C. 223; *Sample v. Bank of British Columbia*, Chicago Legal News, April 20, 1878.

In the first case, DEADY, J., says: "The purpose of the act is apparent. As has been said, it is to secure the people of the State the right to sue the foreign corporations in the courts of the State; but unless the attorney is appointed before the business is transacted, it will not be attained. In *Rex v. Locksdale*, 1 Burrows, 447, Lord MANSFIELD laid down the rule 'that whether a statute is mandatory or not depends upon whether the thing directed to be done is the essence of the thing required.' Now the appointment of an attorney is the very essence of the thing required in this case. In fact, nothing else is required, and without this statute would be utterly inoperative. This act, being mandatory, is therefore a prohibition against the transaction of business by the bank in this State without first complying with its terms."

That another section prescribes a penalty for failure or neglect to comply with the requirements of the statute does not affect this conclusion. *Cin. Mut., etc., Co. v. Rosenthal*, 55 Ill. 85.

Admitting the statute to be prohibitory, it is insisted that the case at bar presents no occasion for its application; that the plea is in abatement, and goes only to the competency of the plaintiff to sue; and that the institution of its suit by the plaintiff was not an act of business within the prohibition.

What meaning and what limits are to be assigned to the statutory phrase, "to do business," is a matter of elaborate argument by counsel.

A corporation is defined to be "an artificial being, invisible, intangible and existing only in contemplation of law." It can do no acts, either within or without the State which

creates it, except such as are authorized by its charter. To such charter we must look to determine the powers it may lawfully exercise.

Ordinarily they have the power to sue ; the power to contract, limited to the objects of the company ; and the power to acquire as well as to hold and enjoy property, real and personal, limited to the necessities of the company. Taking language in its ordinary acceptation, a corporation does business by the exercise of its power to contract, its power to acquire and hold property, real and personal and like powers.

By the exercise of these corporate powers, it carries on its corporate business in the ordinary meaning of the term. By their exercise it establishes its business relations, assumes obligations and acquires rights. By its power to sue it does not seek to do business, as that term is generally understood, but to enforce rights springing from business transactions.

By the comity of the States composing the Union a corporation created by the laws of one State may exercise all the enumerated powers in any other State, in the absence of any prohibitory statute or conflicting policy. Story's Con. Law, § 38.

Our prohibitory statute must be interpreted with reference to this general doctrine and language affecting the capacity of a company to contract or acquire real or personal property, must not be enlarged to prohibit the exercise of another and independent power, that might be exercised by virtue of this general rule of comity which existed prior to the adoption of the statute.

The question is, how far is this general rule modified or abridged by the statute. The prohibition extends to doing business before compliance with the terms of the statute. We do not think this an abridgment of the right of a foreign corporation to sue. It extends only to the exercise of the powers by which it may be said to ordinarily transact or carry on its business. To what *extent* the exercise of these powers is affected we do not decide.

The failure, therefore, of the plaintiff company to comply with the terms of the. statute, however it may affect its right to hold and enjoy the property, the subject of the trespass, did not affect its capacity to sue. The plea was in abatement and went only to the power of the corporation to maintain its action. The plea to have availed, if at all, should have been in bar of the action. The demurrer was properly sustained.

Upon the assessment of damages, two questions are made :

1st. That the court erred in refusing to allow the defendants to prove in mitigation of damages an entry under color of title.

By not pleading further the defendants admitted all the facts alleged in the declaration, which were well pleaded, and they could not be controverted on the inquest. Nor was it competent for the defendants to interpose any substantive defense. *Town of South Ottawa* v. *Foster*, 20 Ill. 298.

The declaration, in its first count, alleges ownership of the close and trespass *vi et armis*.

The defendants, by their admission, stood in the position of naked trespassers, without color of right or title. Their offer to show that their entry was under color of title, to reduce the damages, was in conflict with their admissions and was properly rejected.

2d. It is insisted that, as there was no re-entry by the plaintiff after ouster, it could only recover nominal damages.

This objection goes only to a recovery on the first count, and we do not examine it as a recovery was admissible under the second count.

As to the chattels therein mentioned, the title and right of possession of the plaintiff were admitted, and the defendants could not be heard to question either on the inquest.

The judgment of the court below is

*Affirmed.*