POWDER RIVER CATTLE COMPANY, RESPONDENT,
*v.* COMMISSIONERS OF CUSTER COUNTY, AP-
PELLANT.

PRACTICE— *Error of law— New trial.* — An order of the court made before trial is
not an error which can be made a ground for a new trial.

FOREIGN CORPORATION— *Failure to file certificate— Right to sue.* — The failure of
a foreign corporation to file a copy of its charter, or certificate of incorporation,
with the secretary of the Territory and in the recorder's office of the county
wherein it intends to transact business, as required by section 442, fifth division,
Compiled Statutes, does not deprive it of the right to sue in the courts of this
Territory, where the cause of action is not based upon any act or contract of the
corporation in the conduct of its business.

ACTION AGAINST COUNTY— *Presentation of claim.* —The presentation of a claim to
the board of county commissioners is a condition precedent to the commence-
ment of an action against the county for its recovery.

SAME— *Sections 762 and 764, fifth division, Compiled Statutes, construed.* — A claim
against a county for the repayment of taxes paid under protest is an "account"
within the meaning of sections 762 and 764, fifth division, Compiled Statutes.

*Appeal from Third Judicial District, Yellowstone County.*

The cause was tried before LIDDELL, J.

Statement of facts, prepared by the judge delivering the
opinion.

The plaintiff is a corporation, organized under and by virtue
of the laws of the kingdom of Great Britain and Ireland, and
at the times mentioned in the complaint was doing business in
the Territory of Montana, rearing, buying, and selling cattle,
horses, and live-stock generally. The plaintiff, during the year
1885, had a ranch in Custer County, Montana, and had cattle
and horses in said county and Territory during that time. The
plaintiff has never filed a copy of its charter or certificate of
incorporation either in the office of the secretary of the Terri-
tory or in the office of the recorder of Custer County, as required
by section 442, division 5, Compiled Statutes, or any statement
in connection with such copy, as required by law. The county
assessor, in September, 1885, listed the property of the plaintiff
at 10,000 head of cattle, valued by him at the sum of $200,000,
and returned said list, together with the assessment roll for the
year 1885, to the office of the county clerk of Custer County.
The list aforesaid was made without a previous demand made
by the assessor upon the plaintiff. In November, 1885, the

board of county commissioners, sitting for the equalization of taxes, increased the assessment by adding "$2,000 on account of horses." Thereafter the assessment, valuation, and the tax, amounting to the sum of $4,954, was placed upon the tax list, and was sent to the treasurer for collection. In May, 1886, the treasurer threatened to seize and sell the cattle of the plaintiff because the taxes had not been paid, and the plaintiff, in order to avoid the threatened seizure, paid the amount claimed, said payment being made under protest. The plaintiff thereupon brought suit to recover the amount so paid by it, deducting the sum of $1,964, which, it admits, is properly due the defendant. The other facts appear in the opinion. The defendant appeals from the judgment, and from an order denying a new trial.

*J. W. Strevell,* and *James H. Garlock,* for Appellant.

The legislative assembly, in sections 756, 762, 764, 765, and 777, use the words "account" and "claim" interchangeably, as meaning the same thing. There can be no doubt that the word "account," as used in section 762, is plainly intended to mean every claim or demand against a county, which is required to be satisfied by the payment of money. It is not pretended that plaintiff's claim was ever presented. This is a condition precedent to the right of the plaintiff to maintain any action for its recovery. (*First Nat. Bank* v. *Custer County,* 7 Mont. 464; *Price* v. *Sacramento County,* 6 Cal. 254; *McCann* v. *Sierra County,* 7 Cal. 121; *People* v. *San Francisco County,* 28 Cal. 430; *Alden* v. *Alameda County,* 43 Cal. 279.) The language of the California statute, so far as regards the determination of the case, is identical with the statute of this Territory. (*Rhoda* v. *Alameda County,* 52 Cal. 350; *Christie* v. *Sonoma County,* 60 Cal. 164; *Rhoda* v. *Alameda County,* 69 Cal. 523.) The rule is a just one, and is adopted in several of the States and Territories. (*Fenton* v. *Salt Lake County,* 3 Utah, 423; *Smith* v. *Mohave County,* Ariz. Sept. 1885, 8 Pac. Rep. 160; *Chapman* v. *Wayne County,* 27 W. Va. 496; *Orange County* v. *Ritter,* 90 Ind. 362; *Curtis* v. *Cass County,* 49 Iowa, 421; *Lawrence County* v. *Brookhaven,* 51 Miss. 68; *Luzerne County* v. *Day,* 23 Pa. St. 141; *Belmont County* v. *Zeigelhofer,* 38 Ohio St. 523.)

Statutes of the character of the ones we are considering are

not repugnant to any constitutional provision, and the Territory is not prohibited from imposing such conditions as the legislative assembly may think fit, upon the coming of foreign corporations to carry on their business in this Territory. (*Bank of Augusta* v. *Earle,* 13 Peters, 519; *Paul* v. *Virginia,* 8 Wall. 169; *Ducat* v. *Chicago,* 10 Wall. 410; *Doyle* v. *Cont. Ins. Co.* 94 U. S. 535; *Phila. Fire Assoc.* v. *New York,* 119 U. S. 110; *Pembina Mining Co.* v. *Pennsylvania,* 125 U. S. 181; *People* v. *Fire Assoc.* 92 N. Y. 311–324.)

The plaintiff as a foreign corporation has never placed itself in a position where it could enforce a right of action against a county in the courts of the Territory, even if it had one. (*Cincinnati etc.* v. *Rosenthal,* 55 Ill. 85–91; *Semple* v. *Bank of British Columbia,* 5 Sawy. 88; *American Ins. Co.* v. *Stoy,* 41 Mich. 385; *Goodwin* v. *Col. Mortg. Co.* 110 U. S. 1; *Thorne* v. *Travelers' Ins. Co.* 80 Pa. St. 15; *In re Comstock,* 3 Sawy. 218; *Bank of British Columbia* v. *Page,* 6 Or. 431.)

It was the duty of the plaintiff, being a non-resident, to furnish a list of its property for taxation. (*McMillan* v. *Carter,* 6 Mont. 215.) The assessor was not required to make a demand at any place outside the Territory before being authorized to make the list himself. (*Hart* v. *Plum,* 14 Cal. 149–154; *Robb* v. *Robinson,* 66 Iowa, 500.) If the plaintiff objected to the assessment and valuation of its property as erroneous, it was its duty to apply to the county commissioners sitting as a board for the correction of the assessment roll, to have the error corrected. (*Stanley* v. *Supervisors etc.* 121 U. S. 535–550; *Balfour* v. *Portland,* 28 Fed. Rep. 738; *Williams* v. *Supervisors etc.* 122 U. S. 154; *San Jose Gas Co.* v. *January,* 57 Cal. 614; *Bucknall* v. *Story,* 46 Cal. 589; *Buffalo & S. L. R. R. Co.* v. *Supervisors,* 48 N. Y. 93–105; *Felsenthal* v. *Johnson,* 104 Ill. 21; *Adsit* v. *Lieb,* 76 Ill. 198; *Madison County* v. *Smith,* 95 Ill. 328; *Butterworth* v. *St. Louis Bridge Co.* 123 Ill. 536.) The commissioners had jurisdiction under the statute to increase the assessment of plaintiff's property. (*Robb* v. *Robinson,* 66 Iowa, 500; *Hart* v. *Plum,* 14 Cal. 149.) The allegation of the complaint is not sufficient to show that any part of the taxes were paid under protest. (2 Desty on Taxation, 797; *Meek* v. *McClure,* 49 Cal. 623–628; *De Fremery* v. *Austin,* 53 Cal. 380.)

*Turner & Burleigh,* for Respondent.

The statutes of Montana relating to foreign corporations, properly construed, have no application to this case. (*Cooper Manuf. Co.* v. *Ferguson,* 113 U. S. 727; *Utley* v. *Clark-Gardner Co.* 4 Colo. 369.) There is no requirement of law that a claim for taxes illegally exacted must be presented to a board of county commissioners before suit. (§§ 744, 746, 748, 749, 750, 751, 756, 777, 762, fifth div. Comp. Stats.; *Clear Lake W. Co.* v. *Lake County,* 45 Cal. 90; *Bank of California* v. *Shaber,* 55 Cal. 322; *Bloom* v. *San Francisco,* 64 Cal. 503; *Lehn* v. *San Francisco,* 66 Cal. 76; *Reardon* v. *San Francisco,* 66 Cal. 506; *Waitz* v. *Ormsby Co.* 1 Nev. 370; *Clapp* v. *County of Ceder,* 5 Iowa, 15; *Taylor* v. *Mayor etc. of New York,* 82 N. Y. 10, 25.) Plaintiff's claim is not an account. (*Stringham* v. *Winnebago County,* 24 Wis. 594; *Whitwell* v. *Willard,* 1 Met. 216; *O'Brien* v. *Supervisors,* 2 Sand. 460.) The assessor gave the plaintiff no opportunity to list its own property, which is a condition precedent to the right of the assessor to list it under the law as it was in 1885. (*Northern Pac. R. R. Co.* v. *Carland,* 5 Mont. 171.) Taxes can only be collected from the citizen by a particular proceeding, in strict conformity with the law, and whenever the officers charged with the levy and collection make material departures from the substantial requirements of law, their proceedings are illegal and void, and no obligation on the part of the tax-payer to pay such taxes arises by reason of such illegal and void proceeding. (*Ferris* v. *Coover,* 10 Cal. 633; *People* v. *Pearis,* 37 Cal. 262; *People* v. *Pittsburg R. R. Co.* 67 Cal. 625; *Moss* v. *Shear,* 25 Cal. 38; *People* v. *Hastings,* 29 Cal. 450; *Braly* v. *Seaman,* 30 Cal. 611; *Lake County* v. *Sulphur B. Q. M. Co.* 66 Cal. 17.)

BACH, J.—Before the trial of this cause the defendant moved for judgment upon the pleadings. The court denied the motion, and the action of the court is enumerated as "one of the errors of law occurring during the trial," in the specification of errors attached to the statement on motion for a new trial. An order of the court made before trial cannot be an "error of law occurring during the progress of the trial," and therefore is not an error of law which can be made a ground for a new trial. (See

*Scherrer* v. *Hale, ante,* page 63, decided at this term of court.)
But the defendant, upon the trial, objected to the admission of
testimony, and the grounds upon which the objections were
made are similar to those upon which the motion was based, and
they are thus, by virtue of his exceptions and specifications of
error, properly before this court.

The first claim made by the defendant attacks the right of the
plaintiff to sue.  Since the decision of the case of *Paul* v. *Vir-
ginia,* 8 Wall. 168, the doctrine has been well settled that, sub-
ject to certain exceptions, a State may prescribe the terms upon
which foreign corporations, including corporations organized
under the laws of a sister State, shall carry on business within
its borders.  This rule, with the exceptions, is thus briefly and
clearly announced by that eminent jurist, Mr. Justice Field:
"The only limitation upon this power of the State to exclude a
foreign corporation from doing business within its limits, or
hiring offices for that purpose, or to exact conditions for allow-
ing the corporation to do business or hire offices there, arises
where the corporation is in the employ of the federal govern-
ment, or where its business is strictly commerce, interstate, or
foreign." (See *Pembina Mining Co.* v. *Pennsylvania,* 125 U. S.
181, and cases cited.)  This rule is not questioned, and the
validity of the territorial law is not attacked by the respondent,
the plaintiff corporation.  It maintains, however, that the law
does not prohibit the maintenance of a suit by a corporation in
this Territory, because such corporation has failed to comply
with the law.  This position, we think, is correct.  It is well
settled that, by the comity of nations, a corporation erected by
one sovereignty may carry on business in another, and may sue
in its courts (see Taney, C. J., in *Bank* v. *Earle,* 13 Peters, 519);
and the statute of our Territory takes away the former, and not
the latter, power.  Even upon a contract made in violation of
the law, the question for the court to decide would be, not the
right of plaintiff to sue, but the validity of the cause of action.

We think that counsel for defendant does not reason correctly
upon this point.  He looks to the penalty in order to discover
what is prohibited by the law, instead of looking at the prohibi-
tion, and then applying the penalty.  That which is prohibited
is the conducting of business; and, when the law is violated,

then all "acts and contracts" in the conduct of business are void. But these acts which are void are the acts and contracts of the corporation. The statute does not mean that a corporation cannot protect its property; does not allow others to confiscate the property of the corporation. If the appellant is correct, if a foreign corporation which has failed to comply with section 442 cannot sue in our courts, then it cannot defend; because the defense of a suit is the "act" of the corporation to the same extent as is the prosecution of a suit. If it cannot defend, any suit, however unjust, however outrageous, can successfully be maintained against it; for it cannot testify, it cannot interpose an answer, since that would be an act. If it cannot sue, there will be no remedy in its behalf for property stolen from it. The law does not prohibit such a corporation from coming within the limits of our jurisdiction. It merely declares that it shall do no business until it complies with certain requirements. The prohibition applies to its business, which means the carrying out of those purposes for which such corporation was organized. All the cases cited by the appellant depend upon this theory. In no case cited did the court decide that the corporation had no authority to sue. The reason given in each case was that the contract was void as against the public policy, as declared by statute, and therefore could not be enforced. (See *Cooper Manuf. Co.* v. *Ferguson,* 113 U. S. 727–733.)

The point is clearly raised when applied to cases for tort where there is no contract, and where the act complained of was directed against a corporation. In the case of *Utley* v. *Clark-Gardner Mining Co.* 4 Colo. 369, which was an action to recover damages for trespass, the defendant on appeal was the plaintiff in the court below, and was a corporation organized under the laws of New York. It had failed to comply with the laws of Colorado, which required the filing of a certificate similar to that mentioned in section 442, and which prohibits a foreign corporation from carrying on "any business" until such certificate is filed. The law is so similar to ours that one is led to believe that it is the statute from which ours is derived. In considering the question of the capacity of the corporation to sue, and fully admitting the validity of the law, and that it was prohibitory to the full extent of the terms thereof, the court say: "Ordinarily

they [corporations] have the power to sue; the power to contract
limited to the objects of the company; and the power to acquire,
as well as to hold and enjoy, real and personal property, limited
to the necessities of the company.   Taking language in its ordi-
nary acceptation, a corporation does business by the exercise of its
power to contract, its power to acquire and hold property, real
and personal, and like powers.   By the exercise of their corpo-
rate powers it carries on its corporate business in the ordinary
meaning of the term.   By their exercise it establishes its busi-
ness relations, assumes obligations, and acquires rights.   By its
power to sue it does not seek to do business, as that term is gen-
erally understood, but enforce rights springing from business
transactions.   By the comity of States composing the Union a
corporation created by the laws of one State may exercise all
the enumerated powers in any other State, in the absence of any
prohibitory statute or conflicting policy.   (Story on Constitu-
tional Laws, § 38.)   Our prohibitory statute must be interpreted
with reference to this general doctrine, and language affecting the
capacity of a company to contract or acquire real or personal
property must not be enlarged to prohibit the exercise of another
and independent power, that might be exercised by virtue of
this general rule or comity which existed prior to the adoption
of the statute.   The question is, how far is this general rule
modified or abridged by the statute?   The prohibition extends
to doing business before compliance with the terms of the stat-
ute.   We do not think this an abridgment of the right of a
foreign corporation to sue.   It extends only to the exercise of
the powers by which it may be said to ordinarily transact or
carry on its business."

We are of the opinion that the statute prohibits merely the
carrying on of business; that the penalty for violating the law
is that the acts and contracts in the course of such business are
void; but that the law does not deprive a foreign corporation
of any right to sue, although the law may prevent the enforce-
ment of any contract by such foreign corporations as refuse to
comply with the law.   It will be observed that the cause of
action is not based upon any act of the plaintiff corporation,
but upon the alleged illegal act of the defendant.   It must be
further remembered that the action is really based upon a tort,

although, by a fiction of law, it is an action, "sounding in contract."

We are of the opinion, as we have already intimated, that this action is not based upon any act or contract of the plaintiff declared void by the statute, because it is not an act or contract made by the plaintiff in the conduct of his business; and that, as far as this point is concerned, plaintiff could maintain this cause of action.

The next point made by the appellant is that the plaintiff has never presented its claim to the board of county commissioners, which appellant claims is a condition precedent to the commencement of an action against any county. Appellant relies upon sections 762 to 764, division 5, Compiled Statutes. Counsel for respondent has cited many cases under statutes differing from ours, which hold that under those statutes no demand is necessary. The general principle has been settled by this court in a recent case (see *First Nat. Bank* v. *Custer County*, 7 Mont. 464), and the doctrine there announced is supported by cases in California under statutes similar to ours. (See *Rhoda* v. *Alameda County*, 52 Cal. 350.)

Counsel for respondent also claims that the law applies strictly to "accounts," as the word is used in section 762; accounts involving items. With this we do not agree. Section 764 provides for the appeal from the decision of the county commissioners, and there the word used is "claim," and section 777 gives the commissioners power to summon witnesses "whom they may deem necessary to examine in the investigation of any account or claim against the county." It is made the duty of the county commissioners to settle the indebtedness of the county, to authorize the payment of the debt by an order upon the county treasurer, who can pay money only upon such order, except "when specified provision for the payment thereof is or shall be otherwise made by law" (see § 891); and the county treasurer cannot even pay a judgment without the proper voucher for the payment (see § 751); and the proper voucher would seem to be the order of the board of commissioners. The purpose of the statute is quite apparent. It is to protect the people from unjust payments ordered by the commissioners, and to protect them from unnecessary expenses of litigation. Any

tax-payer may appeal from any order made by the board, and directing the payment of money (§ 764); and, on the other hand, the board is authorized to pass upon all claims for the payment of money against the county, and thus avoid the unnecessary costs involved in an action at law in all cases where they consider the demand just and legal. The demands against a county are numerous; and it is only just and proper that the representatives of the county should have an opportunity to examine and pass upon such accounts or demands before they are made the subject of an action at law. (See *Luzerne County* v. *Day*, 23 Pa. St. 141; *Lawrence County* v. *City of Brookhaven*, 51 Miss. 68.) In the case of *Hohman* v. *Comal County*, 34 Tex. 36, under a different statute, the court gives the reason for the law, that the policy of the law is to place the commissioners in the same positions as executors and administrators, upon whom a demand must be made before they can be made defendants in an action for debt.

Counsel cites the case of *Stringham* v. *Winnebago County*, 24 Wis. 603, in which the court say that it was not the purpose of the legislature that the law should apply to claims arising out of a tort. The court bases its opinion upon the impracticability of a rule which obliges the commissioners to decide grave questions of law, and to investigate many issues of fact. With great respect for the opinion of the court of Wisconsin, we can find no force in that reason. Accounts based upon contracts involve questions of law. The question of the salary of an officer involves the interpretation of statutes, as our own reports will show, and such questions are plainly within the requirements of the statute. Moreover, the board of county commissioners has its legal adviser, the attorney for the county; and we cannot see that intricate questions of fact are apt to arise more frequently in actions of tort than in actions of contract. Moreover, the board has power to summon and investigate any witness who can throw light upon the subject. (See, also, upon this very question, *Maddox* v. *Randolph County*, 65 Ga. 216.)

We are of the opinion that this cause must be remanded for a new trial, because the proper demand was not made.

There are other questions before us in this cause. We refuse to pass upon them, and have avoided stating them and the facts

upon which they are based, because they involve the interests of the public in grave and serious matters, and because they are not necessary to a reversal of this cause, and because the point already passed upon may, for aught we know, finally dispose of the action.

BLAKE, C. J., and DE WOLFE, J., concur.