THE ROCKFORD INSURANCE COMPANY v. ROGERS ET AL.

1. FOREIGN CORPORATIONS—CONTRACTS.
A contract made in this state by a foreign corporation without first having complied with the requirements of law as to the filing of certificates, etc., is valid. The only penalty prescribed by statute for a failure to file such certificates is a personal liability upon the officers, etc., of the corporation in default.

2. SAME—ESTOPPEL.
One who, as agent of a foreign insurance company, has collected its money is, when called on to account, estopped to challenge its right to transact the business out of which the demands collected accrued; and so, also, are the sureties upon his bond conditioned for the payment of the moneys so collected.

3. SAME.

Whether the legislation whereby an insurance department was created, and an agent designated on whom process might be served, repealed the antecedent statutes which prohibited foreign corporations from doing business in this state without having first filed a certificate and designated an agent, considered, but not decided.

*Appeal from the District Court of Arapahoe County.*

Mr. C. J. BLAKENEY and Mr. SYLVESTER G. WILLIAMS, for appellant.

Messrs. WELLS, TAYLOR & TAYLOR, for appellees.

BISSELL, J., delivered the opinion of the court.

The correctness of a judgment granted on a motion therefor based wholly on the pleadings is challenged by this appeal. Suit was brought by The Rockford Insurance Company against Rogers and Stair as sureties on a bond executed by Wells as principal. The complaint charged that the Insurance Company was a corporation organized under the laws of Illinois and permitted to do insurance business in this state. Wells was appointed its agent, and, during February, 1893, collected funds and moneys belonging to the Insurance Company amounting to $938.48; he also collected in March, $687.23, and of the total sum paid about $700, leaving $927.62 which he had collected and failed to pay over. The bond which was set up in the complaint was in the usual form. According to its conditions, Wells had been appointed agent of the Insurance Company in Denver, agreed to accept the trust, keep a regular and accurate record of accounts and moneys received, and pay them over to the company monthly or as often as they might be demanded. In case of default the bondsmen were to be liable. The answer admitted the plaintiff's corporate character, but denied that it was authorized to transact business in the state; admitted the agency, the execution and delivery of the undertaking, and on information and belief denied the receipt of the money. As a second

defense it set up the foreign character of the plaintiff company, and that the moneys which Wells had received were premiums which had been paid to him for the company on account of divers policies of insurance which the company had issued in Arapahoe county to various parties in the ordinary course of business. The defendants then alleged a failure on the part of the Insurance Company to file with the secretary of state or the recorder of deeds in Arapahoe county a certificate signed by the president or secretary, designating its principal place of business and any agent or agents on whom process might be served. The plaintiff replied, denying that the business was carried on solely in Arapahoe county, and averred that it was done in the state, admitted that they had not filed with the secretary of state or the recorder of deeds the certificate mentioned, and then alleged affirmatively an authority to transact business by reason of a compliance with the statutes regulating the conduct of insurance business by foreign companies in the state of Colorado, and a compliance with the regulations of the auditor, who is the superintendent of insurance, and the possession of a certificate issued by him authorizing them to transact the business of their company in the state. There were some immaterial amendments subsequently made that are unimportant to this discussion, and the case stood for trial in the district court on these issues. Thereupon the defendants moved for judgment on the pleadings, which was heard and granted. It is from this judgment that the appeal is prosecuted.

The appellant insists that for three reasons the judgment is erroneous. It is contended that the failure to file a certificate is not pleadable in bar to the action, and that the defense could not in any event be available, because the parties are estopped by the facts and the relations of the agent to the company from raising the question. It is also contended that in any event the statutes which organized and provided for an insurance department, and in direct terms enacted that the auditor should be the agent of the company on whom process might be served, repealed the former provisions with

reference to the filing of a certificate. On at least two of these propositions the law of this state is undoubtedly with the appellant. We would be unadvised except for the opinion printed in the record as to the precise basis on which the trial court proceeded to enter this judgment. From this we learn that the failure to file the certificate with the secretary of state or recorder was regarded by the trial judge as absolutely fatal to the action. It was conceded the position was in apparent conflict with the direct decision of the supreme court on the proposition, and to its intimations and evident acceptance of the contrary rule in a subsequent case, which is cited. We are unable to pursue a similar course. The question has been pressed on our attention anew with very considerable elaboration of argument and citation of authorities, and in a forcible oral argument counsel for the appellees insist it is the duty of this court to reconsider the question, and, if our conclusions should be in harmony with those of the district judge, to adopt a contrary rule. This we decline. In no contingency and under no circumstances, whether in obedience to our own convictions of what the law ought to be, or of what the weight and current of authority had declared it to be, would we attempt to overrule the supreme court or depart from the precedents it has established. We are forced to no such position, however, by the character of the question, or our own convictions respecting it. The constitution and the statutes, which were enacted to carry out its provisions, undoubtedly command foreign corporations who seek to do business in the state to file a certificate in the office of the secretary of state or the recorder of deeds in the county wherein their principal business is to be transacted and designate an agent on whom process may be served before they shall have the right to transact business within its limits to the same extent and on the same plane as domestic corporations. This is not all, however, that the statutes provide. A penalty is prescribed, and when the foreign corporation fails to observe these statutory requirements a personal liability is laid on the officers and directors

of the defaulting corporation. There is no provision declaring all contracts into which they may enter illegal and void, nor is there any other than the general proviso respecting their duty in this particular. Many of the cases in which the question has been discussed simply involved the right of the corporation to enforce a single contract which they had made, and did not in general discuss the question of the invalidity of their contracts where the corporation was attempting to do business as that term is generally construed. The principle, however, on which the decisions have been put seems to us clearly decisive of the present controversy. Where the personal liability penalty is the only one imposed by the statute, the courts assume the legislature deemed this sufficient to insure an observance of the limitation on the power to do business. *Utley v. The Clark-Gardner Lode Mining Co.*, 4 Colo. 369; *Kindel v. Lithographing Co.*, 19 Colo. 310; *Cooper Mfg. Co. v. Ferguson*, 113 U. S. 727; *Fritts v. Palmer*, 132 U. S. 282.

It is quite impossible for this court in response to the request of counsel to enter upon a general discussion of the proposition and adduce all the various reasons which might be urged in support of it. The discussion would subserve no useful purpose, nor would it add ought to the force and effect of what seems to us to be the settled law on this question. We are therefore contented with a general statement of the doctrine and our concurrence.

The circumstances of this case, the character of the suit and the facts alleged as its basis would in our judgment in any event render it impossible to adjudge the plea a defense to the suit. The action is not brought on a contract which the company had entered into with another party which involved the transaction of its insurance business or the issuance of a policy from which the insured was attempting to escape because of its illegality or invalidity. Under any of the authorities there can be no question respecting the right of an insurance company to appoint an agent to collect moneys due it and to take from that agent a bond to answer

for the faithful performance of the engagement into which he enters. The moneys which the agent Wells collected belonged to the Insurance Company. It was money which had been voluntarily paid by the policy holders in return for the protection afforded by the policies, and neither party to the contract of insurance has made or is making any question about the validity or character of the insurance contract. So far as we are advised by the record, the contract was fully executed. The policy holder voluntarily paid his money, accepted the contract and admitted its validity. The agent simply received the premiums, which was money, under these circumstances, belonging to the Insurance Company, and which by his contract he was bound to pay over. The present appellees, by the terms of their bond, are obligated for the honest performance of these duties. Under these circumstances, we are quite unable to see how it would have been possible for the agent, if he had been sued for the moneys, to set up the invalidity of the contracts entered into by the Insurance Company and the insured to escape his own liability to pay over that which he had received and which undoubtedly belonged to the company. On well recognized principles of good morals and fair dealing he would be estopped to question their title to this money, and he would not have been permitted to defend on the plea that the original contract between the company and the insured was entered into in violation of some specific statute. It is often times true one party to a contract may set up in defense that it was *ultra vires* and beyond the power of the corporation to execute. It has never been conceded, so far as we know, that if a contract is not *ultra vires* one party to it may set up the incapacity of the corporation or its want of authority to make the contract which is the basis of the action. *Sherwood v. Alvis*, 83 Alabama, 115.

To adopt any other theory would work out most astonishing results. It would permit a person to accept an agency of a corporation, collect moneys which concededly belonged to it, and when sued and asked to account he would be per-

mitted to defend because of the lack of corporate capacity of the foreign corporation to do business in the state. This would certainly legalize larceny and render embezzlement both legitimate and profitable. Unless some more cogent reason can be shown than any which has been called to our attention, we must decline to bring about such results. The agent got the money and was bound to pay it over. For the faithful performance of his duty in this regard, the sureties bound themselves. They cannot now be heard to defend on the hypothesis that the original contract between the company and the insured was invalid, or that the corporation had in any respect failed to comply with the statute which attempts to limit the power of foreign corporations to do business in this state.

We are asked by the Insurance Company to decide that the subsequent legislation, whereby an insurance department was created and an agent thereby designated on whom process might be served, repealed the antecedent statutes which prohibited foreign corporations from doing business in the state without having first filed a certificate and designated an agent. There is considerable force in these suggestions and they are not without the support of adjudications. *St. Louis, I. M. & S. Ry. Co. v. The Commercial Union Ins. Co.*, 139 U. S. 223; *State ex rel. v. Rotwitt*, 17 Mont. 41.

We prefer, however, to leave this question undetermined. We do not regard it as safely and completely presented by this record. The replication undoubtedly sets up the possession of a certificate issued by the auditor authorizing the company to do business in the state. We are not quite able, however, to accept this averment as entirely conclusive and satisfactory on this question. It is somewhat unlike an allegation in the complaint which is admitted by the answer, or one stated in the answer which is admitted by the replication, because under our system all affirmative averments contained in the replication are regarded as denied without further plea. Under these circumstances it might perhaps with some reason be said there is no admission in the plead-

ing that the company possessed this certificate. While this contention is possible, and the case can be reversed on other grounds without indulging in any presumptions or conclusions which are not warranted by the facts which are concededly before us, we prefer to rest the decision on the other basis. When the case goes back for a new trial, if this fact is proven and established by the record, should the case be thereafter appealed, the question would be presented in such a way that we could, without violating any principle and without indulging in any presumption, pass on the proposition.

The court erred in rendering a judgment on the pleadings, and it will therefore be reversed.

*Reversed.*